NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,
and The Travelers Indemnity Company,
foreign corporation and American Mo-
torists Insurance Company, a corpora-
tion of the State of Illinois, Plaintiffs,

v.

STAUFFER CHEMICAL COMPANY, a
Delaware corporation and Stauffer Ba-
sic Chemical Holdings, Inc., a Delaware
corporation as successor in interest to
Stauffer Chemical Company, Defen-
dants.

Superior Court of Delaware,
New Castle County.

Submitted: Nov. 14, 1988.
Decided: Jan. 31, 1989.

Upon defendant's motion to compel—GRANTED in part, DENIED in part.

Michael Weiss, of Kimmel, Spiller & Weiss, Wilmington, Robert A. Zeavin, Adrienne F. Millican, John A. Graniez and Loucinda Laughlin, of Buchalter, Nemer, Fields & Younger, Los Angeles, Cal., for plaintiff Nat. Union Fire Ins. Co.

Robert C. O'Hara and Alan T. Boyd, of Bayard, Handelman & Murdoch, Wilmington, Pamela G. Ostrager, Sophia Drewnowski and Diana R. Frost, of Coudert Bros., New York City, for plaintiff The Travelers Indem. Co.

Robert K. Beste, of Biggs & Battaglia, Wilmington, Timothy C. Russell and Patricia A. Gotschalk, of Drinker, Biddle & Reath, Washington, D.C., for plaintiff American Motorists Ins. Co.

Thomas Reed Hunt, Jr. and Brett D. Fallon, of Morris, Nichols, Arsht & Tunnell, Wilmington, Robert N. Saylor, Matthew L. Jacobs, Jeffrey D. Nuechterlein, and Marialuisa S. Gallozzi, of Covington & Burling, Washington, D.C., for defendants Stauffer Chemical Co. and Stauffer Basic Chemical Holdings, Inc.

## OPINION

MARTIN, Judge.

The discovery issues presented in this case arise from the interpretation of comprehensive general liability insurance policies issued by plaintiffs National Union Fire Insurance Company ("National Union"), The Travelers Indemnity Company ("Travelers"), and American Motorists Insurance Company ("Amico") to the defendant Stauffer Chemical Company ("Stauffer") between January 1969 and January 1981. Plaintiffs have brought a declaratory judgment action in Superior Court of Delaware, New Castle County, to determine whether they have an obligation to defend and indemnify Stauffer for liabilities arising from its disposal of waste materials at the Tybouts Corner landfill in New Castle County.[1] The insurance carriers contend that claims emanating from this dumping are outside the coverage of the policies because of exclusionary language contained in the policies. On the contrary, Stauffer argues that the insurers have a duty to defend and indemnify.

On December 23, 1987, Stauffer served its first set of interrogatories along with a first request for production of documents to each of the plaintiffs seeking information bearing on the interpretation of the policies. The carriers each responded with wide-ranging objections which will be discussed in detail below. Whereupon, Stauffer filed a Motion to Compel Discovery on July 18, 1988 requesting that the Court order Stauffer to respond fully to the interrogatories and document requests.[2] At a hearing on the motion held on August 23, 1988, the Court requested the parties to brief several issues relating to the discoverability of documents and information including the status of discovery, the relevance of "other insureds" claim files, reinsurance information and reserves.

On September 16, 1988, Amico agreed to produce certain documents to comply with Stauffer's discovery requests. Specifically, Amico agreed to produce twenty non-party pollution claim files, reinsurance information, interpretive manuals and guidelines

---

**1.** These waste disposal activities have been the subject of an EPA action in the United States District Court for the district of Delaware, *U.S. v. New Castle County et. al.*, Civ. No. 80–489, and a civil action filed in the same court, *Charles F. Andrews v. New Castle Co. et al.*, Civ. No. 84–124.

**2.** Stauffer requested that Amico should be ordered to respond to interrogatory numbers 1–32, 34–68, 72–77 and 92 and document request numbers 1–21; National Union should be ordered to respond to interrogatory numbers 1, 3–78 and document request numbers 1–21; Travelers should be ordered to respond to interrogatory numbers 1–4, 10–18, 21–44, 47–50, 52–59, 61–68, 72–76 and 85 and document request numbers 2 and 4–21.

concerning claims-handling, documents relating to the standard-form comprehensive general liability policy, pleadings in all of Amico's pollution-coverage cases with a list of Amico representatives who have testified in these cases and the reserves information regarding claims from the Tybouts Corner landfill. The production by Amico has satisfied Stauffer's discovery request.

Travelers has agreed to produce relevant claims handling materials bearing upon the interpretation of language in the policies. Travelers has not produced other insureds' files, reinsurance information and reserves information because these documents allegedly are not relevant to a determination of Travelers' duty to defend and indemnify under its policies.

National Union has produced underwriting files relating to its policies and has agreed to produce its environmental claims files for other claims against Stauffer. Further, National Union has agreed to produce claims handling materials including standard form liability policies used by National Union. National Union continues to object to the following discovery requests on the basis of irrelevancy: 1) information about claims against non-party insureds of National Union; 2) reinsurance information; 3) reserves information and; 4) information pertaining to National Union's relation with the Insurance Services Organization.

On the issue of other non-party insureds' claim files Stauffer has proposed a compromise entailing the production of the twenty earliest and twenty most recent claim and underwriting files since January 1, 1969 for pollution or hazardous waste disposal subject to redaction needed to protect confidential information. The other remaining issues are the discovery of reinsurance and reserves information.

### I. Other Insureds

The first issue presented is whether Stauffer can discover claim files of non-party insureds of both Travelers and National Union. A party may discover relevant non-privileged information if such information is "reasonably calculated to lead to the discovery of admissible evidence." Del.Super.Civ.R. 26(b)(1). In Delaware, ambiguous language in an insurance contract is construed against the insurance company. *Steigler v. Insurance Co. of North America*, Del.Supr., 384 A.2d 398 (1978). *See also Indian Harbor, Inc. v. Safeco Title Insurance Co. of Maryland*, Del.Super., C.A. 86C–NO–23, 1987 WL 18747, Chandler, J. (October 19, 1987). An ambiguity in a policy exists when the language allows two or more reasonable interpretations. *Derrickson v. American National Fire Insurance Co.*, Del.Super., C.A. No. 846–SE–14, 1987 WL 14884 Ridgely J. (June 30, 1987); *Hallowell v. State Farm Mutual Automobile Co.*, Del.Supr., 443 A.2d 925 (1982).

Stauffer contends that an ambiguity exists in certain policy provisions due to the carriers inconsistent application of the terms. Both Travelers and National Union argue that other insureds' claim files are irrelevant and their production burdensome. They point to a Minute Order by a Superior Court judge in California in which similar requests made by Stauffer were completely stricken. *Stauffer Chemical Co. v. American Motorists Insurance Company*, Super.Ct.Cal., County of Los Angeles, C 597 389, Markey J. (September 7, 1988) (ORDER). These plaintiffs fail to point out that this Order created a process for the Court to streamline objections to discovery disputes. Further, the Court vacated Stauffer's discovery requests without prejudice.

The gist of the argument made by Travelers and National Union is that the facts specific to other insurance contracts are not relevant to the contracts with Stauffer. Therefore, they would not enhance the interpretation of the carriers' duty to defend under these contracts. National Union further contends in response to Stauffer's compromise proposal that a search for 40 environmental claim files and 40 underwriting files to comply with Stauffer's proposed compromise would be unduly burdensome because the files may be located at various offices around the country.

The carriers cite a number of cases to support the proposition that other insureds files are irrelevant and burdensome. *Olin Corp. v. Insurance Company of America*, No. 84 Civ. 1968 (S.D.N.Y. July 10, 1986); *Morton Thiokol Inc. v. General Accident Insurance Co. of America*, N.J.Super.Ct., Bergen Cty., No. C–3956–85, Huot J. (July 30, 1986); *UNR Industries Inc. v. Continental Insurance Co.*, No. 85 C 3532 (N.D. Ill. September 4, 1986); *Transport Indemnity Insurance Co., Inc. v. Argonaut Insurance Co., Inc.*, Super.Ct.Cal., San Mateo, Phelps J. (February 1, 1988). In *Olin*, discovery directed towards other toxic substances was held to have no relevance to the determination of a duty to defend or indemnify Olin Corporation as to DDT claims or to establish bad faith on the part of the carrier by allowing coverage to other insureds. In the present case, there is no such distinction of toxic substances because the claims involve pollution from hazardous waste disposal. The Court in *Morton Thiokol* was concerned that other hazardous waste claims would lead to a legal conclusion or presumption of ambiguity in the insurance contract. The scope of discovery under Superior Court Civil Rule 26 is to allow discovery that is reasonably calculated to lead to admissible evidence. At this stage, the Court is not determining whether information is admissible. In that vein, Stauffer should be given some opportunity to discover information which may present an ambiguity in the insurance contracts at issue.

In the *UNR Industries* case, *supra*, dealing with insurance coverage for asbestos claims, the parties agreed that the insurance contracts were not ambiguous and the method of coverage was governed by agreements. The Court in *Transport Indemnity* disallowed the production of other insureds' claim files because claims should be handled by insurers according to the specific facts of each case and such discovery would be a tremendous burden, possibly interfering with the efficiency of

claim settlement. Along this same line of reasoning, using a balancing approach, the relevance of other insureds' files may be outweighed by the burden to the insurer. *See The Continental Insurance Co. v. Sea–Port Service, Ltd.*, C.A. No. 86–267–JLL (D.Del. April 5, 1988).

These cases do not address the practical consideration that the burden can be limited by tailoring the discovery order.[3] The discovery may be limited to a particular number of claim files and a limit may be placed on time and geography. Additionally, a protective order may be issued to protect the confidentiality of those files where redaction will not be sufficient. The United States District Court for the Southern District of New York ordered insurers to produce the ten earliest and ten most recent claim files in *Stonewall Insurance Co. v. National Gypsum Co.*, No. 86–967 (S.D.N.Y., March 21, 1988), *aff'd*, 1988 WL 96159, Kram, J., (Sept. 6, 1988). The order limited the insurers search to offices where the information could reasonably be found and included a provision that other insureds' files be redacted. This Court has also granted a motion to compel the production of the delayed-manifestation claims of other policyholders against the carriers pursuant to a joint plan to be negotiated by the parties. *See Maryland Casualty Co. v. W.R. Grace & Co.*, 83 Civ. 7451(SWK) (S.D.N.Y. March 4, 1986). The United States District Court for the District of Columbia has allowed the discovery of other insureds' claims, granting a period of time for insurers to obtain insureds' consent to release these documents or to redact the insureds' identity and any confidential information. *Eli Lilly and Company v. The Home Insurance Co.*, C.A. No. 82–0669 (D.D.C. July 8, 1983). Further, in *Commercial Union Insurance Co. v. Pittsburgh Corning Corp.*, C.A. No. 81–2129 (E.D.Pa. June 1, 1982), a protective order seeking to limit discovery of claims against other insureds was denied because handling of other claims may have a bear-

---

3. The United States District Court for the District of Delaware in *New Castle County v. Hartford Accident and Indemnity Co.*, C.A. No. 85–436–JLL (D.Del. June 1, 1987) has granted insured's motion to compel discovery of documents relating to claim files of other insureds even without limitations.

ing on how the insurance policies in question were interpreted.

The basis of Stauffer's contention that claim files of other insureds are relevant to the interpretation of the policies issued by National Union and Travelers is that the language contained in the policies is the result of standard form language used in the industry. Stauffer points to the fact that similar discovery has been permitted in the *New Castle County* case, *supra*. Stauffer also argues that certain provisions in the policies are similar to standard-form policies prepared by the Insurance Services Office, Inc. ("ISO"), an insurance trade association.[4] Consequently, the handling of other claims under a standard-form policy would be relevant to the interpretation of the policies at issue.

National Union and Travelers counter with the argument that the policies were manuscript policies negotiated by the parties. Both carriers cite the fact that Stauffer had two large insurance brokers to assist in the negotiations for the policies. Moreover, Travelers contends that Stauffer had an independent insurance department headed by an individual sophisticated in insurance matters. Travelers further points to the affidavit of their supervising underwriter which indicated that the policies were manuscript policies which were the result of extensive negotiations and changes. National Union states that Stauffer formed an insurance subsidiary corporation to reinsure the comprehensive general liability coverage under the National Union policies. They also note various differences between the National Union policies and the ISO form, particularly in the pollution exclusion provisions.

Essentially, the insurance carriers purport that the language of the policies is clear and unambiguous. *See Lamberton v. Travelers Indemnity*, Del.Super., 325 A.2d 104 (1974). Further, the carriers argue that if ambiguities exist in the policies, they should not necessarily be construed against the insurers because Stauffer was in an equal bargaining position with sophisticated insurance personnel and large insurance brokers. *See Shell Oil Co. v. Accident & Casualty Co.*, Super.Ct.Cal., San Mateo, No. 278 953, Cohn J. (October 6, 1988).

The critical question presented is whether ambiguities exist in the policies. *Lamberton*, 325 A.2d at 104. Ambiguities are found when the language in the policy leads to two or more reasonable interpretations or the deliberate selection of the language creates confusion. *Id.* Here, Stauffer seeks to discover interpretive manuals and other insureds' claim files in order to see if ambiguities are present in the policies.

This Court finds that the claim files and the interpretive materials are relevant to the determination of ambiguity and should be the subject of discovery that is structured to lessen the burden on insurers while protecting the confidentiality of other insureds. The decision of the Court reflects a balancing between the relevance of the materials requested, the burden on insurers of producing those materials and the confidentiality of other insureds. The burden on insurers should be considered in light of the various methods discussed above which reduce that burden. If the relevance of the materials requested outweighs the burden to insurers, then appropriate measures should be taken to protect the confidentiality of the insureds.

This leads to a discussion of whether the discovery of other insureds' claim files would infringe upon their rights to confidentiality. Travelers relies on *Mallen v. Merrill Lynch Futures Inc.*, 102 F.R.D. 801 (N.D.Ga.1984) where a brokerage firm was not compelled to produce information concerning the trading activity of clients because of the confidential relationship between stockbroker and client. A determining factor in *Mallen* as decided by the Court was that the trading activities information sought was not relevant to the plaintiff's securities fraud action against

---

4. Stauffer claims that the definitions of the terms "Occurrence", "Damages" and "Property Damage" in the policies issued by Travelers, National Union and Amico are similar, thus indicating that the policies were standard in the insurance industry.

the brokerage firm and a stockbroker. The difference with the case at bar is that Stauffer's request for other insureds' claim files is reasonably calculated to lead to the discovery of admissible evidence on the question of whether ambiguities existed in the insurance policies.

■ To balance the foregoing concerns, the Court makes the following order. Regarding other insureds, Travelers and National Union shall produce both claim and underwriting files since January 1, 1969 pertaining to coverage for pollution or the disposal of hazardous waste for the ten earliest and ten most recent files in each category. Travelers and National Union may redact the files to the extent deemed necessary to preclude the release of confidential information. Additionally, these plaintiffs should make a diligent search for and produce claims-handling manuals and guidelines with respect to the above named files including documents that relate to the ISO standard-form comprehensive general liability policies.

## II. Reinsurance

■ The next issue raised is whether Stauffer should be permitted to discover reinsurance information exchanged between the carriers and their reinsurers.[5] Stauffer contends that reinsurance information is relevant to the coverage defenses and is not privileged. National Union and Travelers argue that reinsurance contracts are separate from the insurance contracts between the carriers and the policyholder. They cite to *Ascherman v. General Reinsurance Corp.*, 183 Cal.App.3d 307, 228 Cal.Rptr. 1 (1986), in which a doctor had no cause of action against the reinsurer of his malpractice carrier because the original insured has no interest in the reinsurance

contract. The principles of *Ascherman* are distinguishable in that here Stauffer is defending a declaratory judgment action and not bringing a claim against the reinsurer. The purpose of Stauffer's discovery is to find whether the insurers considered the present claims to be covered by the policy.

The plaintiffs further contend that discovery of reinsurance information at this stage of the proceedings is irrelevant. *See Independent Petrochemical v. Aetna Casualty & Surety Co.*, 117 F.R.D. 283 (D.C. Cir., 1986); *UNR Industries, supra.* This contention fails on the basis that under Delaware Superior Court Rule 26(b)(2) a party may discover the existence and contents of insurance agreements.[6] Interpreting Federal Rule of Civil Procedure 26(b)(2), which is identical to the Delaware rule, the Court in *National Union Fire Insurance Co. of Pittsburgh v. Continental Illinois Corp.*, 116 F.R.D. 78 (N.D.Ill. 1987) found that reinsurance contracts are discoverable. The Court reasoned that reinsurers carry on insurance business and direct liability by a party's insurer to the other party is not mandated by the rule. *Id.* at 84. Other Courts have allowed discovery of reinsurance information. *See Stonewall, supra; Maryland Casualty Co., supra.* The Delaware Superior Court has permitted the discovery of reinsurance documents and documents relating to the reinsurer's observations of the underlying coverage dispute. *Playtex, Inc. v. Columbia Casualty Co.*, Del.Super., C.A. No. 88C–MR–233–1–CV, 1988 WL 109304 Del Pesco J. (Oct. 12, 1988). Applied to the case at bar, the discovery of reinsurance agreements and communications between the carriers and their reinsurers is relevant to the issue of whether the insurers be-

---

**5.** Reinsurance has been defined as:

[A] special form of insurance obtained by insurance companies to help spread the burden of indemnification. A reinsurance company typically contracts with an insurance company to cover a specified portion of the insurance company's obligation to indemnify a policyholder in the event of a valid claim. *Excess & Casualty Reinsurance Association v. Insurance Commissioner of the State of California,* 656 F.2d 491, 492 (9th Cir.1981).

**6.** Rule 26(b)(2) reads in part:

A party may obtain discovery of the existence and contents of any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.

lieved that these policies covered the claims against Stauffer.

The final issues concerning reinsurance information involve privilege. The insurers argue that communications with their reinsurers are privileged insofar as they relate to attorney-client communications. *See* Del.U.R.E. 502. In *Maryland Casualty Co., supra,* the Court compelled production of reinsurance documents which did not contain privileged communications between the insurers and outside counsel. This Court will follow the ruling of *Maryland Casualty Co.* in that National Union and Travelers shall thereby produce reinsurance agreements and communications with their reinsurers but not communications with their outside counsel.[7] As to the question of work product under Delaware Superior Court Civil Rule 26(b)(3), these plaintiffs may withhold only those materials prepared in anticipation of litigation as defined by this Court in *Playtex, Inc. v. Columbia Casualty Co.,* Del.Super., C.A. No. 88C–MR–233–1–CV, 1989 WL 5197 Del Pesco, J. (January 5, 1989).

### III. Reserves

■ The final issue raised in the Motion is whether Stauffer should be permitted to discover information pertaining to reserves set aside by the carriers on hazardous waste claims.[8] Simply stated, reserves are funds set aside for the payment of future claims. *See Maryland Casualty Co. v. United States,* 251 U.S. 342, 40 S.Ct. 155, 64 L.Ed. 297 (1920). Stauffer seeks to discover reserves information because it is relevant to the question of whether the carriers believed that these types of hazardous waste claims were covered by the policies. Further, Stauffer suggests that this information will show the carriers policy for handling such claims.

In support of its position, Stauffer cites three California cases, *Samson v. Transamerica Insurance Co.,* 30 Cal.3d 220, 178 Cal.Rptr. 343, 636 P.2d 32 (1981); *Miller v.*

*Elite Insurance Co.,* 100 Cal.App.3d 739, 161 Cal.Rptr. 322 (1980); *Purex Industries, Inc. v. Leslie Walpole Procter on behalf of Underwriters at Lloyd's London,* Super.Ct.Cal., Los Angeles, No. C446 935, Markey J. (August 2, 1988). These cases are distinguishable from the present action. In both *Samson* and *Miller,* there were bad faith claims against the insurer for refusing to settle. The extent of discovery permitted in *Purex* was limited by the Court's restrictions relating to privileged documents.

Another case relied upon by Stauffer is *Simon v. G.D. Searle & Co.,* 816 F.2d 397 (8th Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 268, 98 L.Ed.2d 225 (1987) in which aggregate reserve information prepared by non-lawyer corporate officials was held to be discoverable in a products liability action. The discussion in *Simon* centers largely on the extent to which the attorney-client and work product doctrine apply to such information.

The plaintiffs here contend that the reserves information sought by Stauffer is irrelevant to the dispute over coverage and is privileged. The reasoning to support the exclusion of reserves information from discovery is that it relates to internal opinions and conclusions of the insurer which are largely hypothetical in nature. *Union Carbide Corp. v. Travelers Indemnity Co.,* 61 F.R.D. 411, 413 (W.D.Pa.1973). In essence, reserves are general estimates of potential liability which may not involve a detailed factual and legal basis. *Independent Petrochemical, supra* at 288. Moreover, reserves information may have limited relevance and little probability of leading to admissible evidence. *Id.* Applied to the present facts, the decision of the insurers to establish reserves is not closely connected with the interpretations of the policies in regard to the claims arising from the Tybouts Corner site because the reserves are only estimates. The fact that reserves were established does not neces-

---

**7.** This order applies to defendant's First Request for Production of Documents, number 19, directed to plaintiffs National Union and Travelers.

**8.** Reserves information was requested by Stauffer in its First Request for Production of Documents to National Union and Travelers, Number 15.

sarily mean that the insurers believed that such claims would be covered by the policies. For this reason, the Court finds that Stauffer's request for reserves information is not reasonably calculated to lead to the discovery of admissible evidence.[9]

### CONCLUSION

As a consequence of the aforegoing analysis, plaintiffs National Union and Travelers will respond within (60) days of this ruling to the interrogatories and document requests of defendant Stauffer in accordance with the mandates of this opinion.[10] National Union and Travelers will each produce claim and underwriting files of other insureds for the ten earliest and ten most recent files in each category regarding coverage for pollution or the disposal of hazardous waste since January 1, 1969. Plaintiffs may redact these files to the extent deemed necessary to prevent the release of confidential information. The plaintiffs should also produce claims—handling manuals and guidelines including documents relating to ISO standard-form comprehensive general liability policies.

Concerning reinsurance information, the plaintiffs will produce reinsurance agreements and communications with their reinsurers. Communication by the plaintiffs with outside counsel, however, will be excluded pursuant to the attorney–client privilege defined by Delaware Uniform Rule of Evidence 502. As to the work product doctrine, the plaintiffs may withhold only those materials prepared in anticipation of litigation according to the guidelines established by the Court in *Playtex, Inc. v. Columbia Casualty Co.*, Del.Super., C.A. No. 88C–MR–233–CV, Del. Pesco J. (January 5, 1989). The plaintiffs will not be required to produce any information pertaining to reserves established by the carriers.

Stauffer also requests reasonable expenses incurred in presenting this motion.

Delaware Superior Court Civil Rule 37(a)(4) grants the Court power to apportion reasonable expenses among the parties when a motion to compel discovery is granted in part and denied in part. Because some of the objections posed by National Union and Travelers are meritorious in nature, the Court denies Stauffer's request for expenses.

IT IS SO ORDERED.

---

9. Due to the resolution of this issue on the basis of relevance, the plaintiffs' objections as to privilege will not be reached.

10. National Union should respond to interrogatory numbers 1, 3–78 and document request numbers 1–14, 16–21. Travelers should respond to interrogatory numbers 1–4, 10–18, 21–44, 47–50, 52–59, 61–68, 72–76 and 85 and document request numbers 2, 4–14, 16–21.