# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| THE CIGNA GROUP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N23C-03-009 SKR CCLD |
| | ) | |
| XL SPECIALTY INSURANCE | ) | |
| COMPANY, IRONSHORE | ) | |
| SPECIALTY INSURANCE | ) | |
| COMPANY, and IRONSHORE | ) | |
| INDEMNITY, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

*Upon Consideration of Plaintiff's Motion to Compel Discovery
Directed at XL Specialty Insurance Company:*

### GRANTED in part and DENIED in part.

Jennifer C. Wasson, Esquire, Carla M. Jones, Esquire, and Ryan D. Kingshill, Esquire, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware, and Brook Roberts, Esquire, Drew Gardiner, Esquire, Christine Rolph, Esquire, James Tabb, Esquire, Jessica England, Esquire, and Paula Moura, Esquire, LATHAM & WATKINS LLP, San Diego, California, and New York, New York, *Attorneys for Plaintiff The Cigna Group.*

Bruce E. Jameson, Esquire, and John G. Day, Esquire, PRICKETT, JONES & ELLIOTT, P.A., Wilmington, Delaware, and Tammy Yuen, Esquire, Rebecca Amdursky, Esquire, and Amber Locklear, Esquire, SKARZYNSKI MARICK & BLACK LLP, New York, New York, *Attorneys for Defendant XL Specialty Insurance Company.*

Marc S. Casarino, Esquire, Karine Sarkisian, Esquire, and Gary S. Kull, Esquire, KENNEDYS CMK LLP, Wilmington, Delaware, and Basking Ridge, New Jersey, *Attorneys for Defendants Ironshore Specialty Insurance Company and Ironshore Indemnity, Inc.*

**RENNIE, J.**

## INTRODUCTION

This memorandum opinion considers, grants in part, and denies in part Plaintiff The Cigna Group's ("Cigna")[1] motion to compel discovery from Defendant XL Specialty Insurance Company ("XL").[2]  Cigna purchased excess insurance policies from the defendant insurance companies, then received and defended against a Civil Investigative Demand ("CID") from the United States Department of Justice ("DOJ").  In the underlying action, Cigna asserts that the insurers breached these insurance policies by failing to reimburse Cigna for costs it incurred defending against the CID because those costs are covered under the policies.

## FACTUAL OVERVIEW[3]

Plaintiff Cigna, a Delaware corporation based in Connecticut, sells health insurance.  Through subsidiary Medicare Advantage organizations ("MAOs"), Cigna offers Medicare Advantage health insurance plans, which provide supplemental healthcare benefits for Medicare beneficiaries.

Defendants XL, a Delaware corporation based in Connecticut, Ironshore Specialty Insurance Company, an Arizona corporation based in Massachusetts

---

[1] Before February 2023, Cigna was named "Cigna Corporation."  Compl.

[2] Pl. Cigna Group's Mot. to Compel Directed at XL Specialty Insurance Company [hereinafter "Mot. to Compel Directed at XL"].

[3] These facts are largely derived from Cigna's complaint, XL's answer, Cigna's motion to compel discovery from XL, XL's brief in opposition to that motion, and attachments thereto.

("Ironshore Specialty"), and Ironshore Indemnity, Inc., an Illinois corporation based in Massachusetts ("Ironshore Indemnity") (together, "Ironshore," and collectively, the "Excess Insurers"), also sell insurance coverage.

On October 1, 2016, Cigna entered into a managed care organization errors and omissions ("MCE&O") insurance policy (the "Primary Policy") with Ace American Insurance Company ("Chubb"). On the same day, Cigna entered into excess insurance policies with XL (the "XL Policy") and Ironshore Indemnity (the "Ironshore Policy") (together, the "Excess Policies") to receive two additional layers of insurance coverage.

On December 15, 2016, Cigna received a CID from the DOJ. Seven months later, on July 25, 2017, Cigna's insurance broker, AON Financial Services ("AON"), notified Chubb, XL, and Ironshore about the CID. On July 31, 2017, XL sent a letter to AON, in which XL stated that its claims specialist, Rebecca L. Pidlak ("Pidlak"), was reviewing the matter. On October 1, 2017, the Primary Policy and the Excess Policies expired.

Over two years later, on December 10, 2019, Chubb wrote a letter to Cigna, in which it stated that the CID constituted a coverable "Claim" under the terms of the Primary Policy and agreed to reimburse Cigna for its defense against the CID. On March 4, 2020, however, Ironshore and XL wrote letters to Cigna, in which they stated that the CID does not constitute a "Claim" under their respective policies.

3

Accordingly, Ironshore and XL declined to reimburse Cigna for expenses incurred defending against the CID.

In September 2020, Chubb reimbursed Cigna for part of the total CID defense expenses, reaching the limit under the Primary Policy.

## PROCEDURAL HISTORY

On March 1, 2023, Cigna filed the complaint in this case against the Excess Insurers, XL and Ironshore. There, Cigna asserts claims for declaratory relief and breach of contract, stemming from the failure by the Excess Insurers to reimburse Cigna for the CID defense expenses.[4]

On June 23, 2023, pursuant to an extension from the Court, XL filed an answer to the complaint, including counterclaims for declaratory relief and breach of contract.[5] On June 30, 2023, Ironshore filed an answer to the complaint.[6] On August 18, 2023, Cigna filed an answer to XL's counterclaims.[7]

On November 17, 2023, Cigna sent a series of requests for production to XL. On November 22, 2023, Cigna sent interrogatories and requests for admission to XL. On December 18, 2023, XL responded to Cigna's requests for production,

---

[4] Compl.
[5] XL Specialty Insurance Company's Answer to Compl. and Countercls. Against Cigna Group.
[6] Ironshore Specialty Insurance Company and Ironshore Indemnity Inc's Answer to Pl.'s Compl.
[7] Answer to XL Specialty Insurance Company's Countercls.

raising objections.[8]   On December 22, 2023, XL sent Cigna responses to the interrogatories and requests for admission, raising objections.[9]

On January 17, 2024, Cigna wrote a letter to XL, in which it stated that XL's discovery responses were inadequate.[10]   On February 1, 2024, Cigna and XL met and conferred about the adequacy of the discovery responses.[11]   On February 8, 2024, Cigna wrote a letter to XL, in which it attempted to memorialize in writing the parties' remaining disagreements on discovery.[12]

On February 26, 2024, Cigna filed the instant motion to compel discovery from XL.[13]   On March 6, 2024, XL filed a brief in opposition to the motion.[14]   On March 14, 2024, the Court heard argument on the motion.  At that time, the Court reserved decision on the motion to compel directed at XL.[15]   This is the Court's ruling on that motion.

---

[8] Aff. Paula Moura Supp. Mot. to Compel Directed at XL Specialty Insurance Company Ex. 1.
[9] *Id.* Exs. 2, 3.
[10] *Id.* Ex. 4.
[11] *Id.* Ex. 6.
[12] *Id.*
[13] Mot. to Compel Directed at XL.  On the same day, Cigna filed a motion to compel discovery from Ironshore. Pl. Cigna Group's Mot. to Compel Directed at Ironshore Specialty Company and Ironshore Indemnity, Inc.
[14] XL Specialty Insurance Company's Resp. Cigna Group's Mot. to Compel Directed at XL Specialty Insurance Company [hereinafter "XL's Resp."].  On the same day, Ironshore filed a brief in opposition to Cigna's motion to compel directed at Ironshore.  Defs. Ironshore Specialty Insurance Company and Ironshore Indemnity Inc's Opp'n Pl.'s Mot. to Compel.
[15] At this hearing, the Court also granted in part and denied in part Cigna's motion to compel discovery from Ironshore.

## STANDARD OF REVIEW

Superior Court Civil Rule 26 provides that the parties "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party."[16] The scope of discovery is "broad and far-reaching" and its purposes are "to advance issue formation, to assist in fact revelation, and to reduce the element of surprise at trial."[17]

To evaluate a motion to compel discovery, the Court "determines whether the discovery sought is reasonably calculated to lead to admissible, non-privileged evidence."[18] Objections to discovery requests "will not be allowed unless there have been clear abuses of the process which would result in great and needless expense and time consumption."[19] The objecting party bears the burden to show that the information was improperly requested.[20]

---

[16] Del. Super. Civ. R. 26(b)(1). Discoverable materials include "the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter." *Id.* The inadmissibility of that information at trial is no grounds for objection if the information is reasonably calculated to lead to discovery of admissible evidence. *Id.*

[17] *Suburban Med. Servs. v. Brinton Manor Ctr.*, 2022 WL 17688194, at *2 (Del. Super. Dec. 15, 2022) (quoting *Woodstock v. Wolf Creek Surgeons, P.A.*, 2017 WL 3727019, at *6 (Del. Super. Aug. 30, 2017); *Levy v. Stern*, 1996 WL 742818, at *2 (Del. Dec. 20, 1996)).

[18] *Suburban Med. Servs.*, 2022 WL 17688194, at *2 (quoting *Hunter v. Bogia*, 2015 WL 5050648, at *2 (Del. Super. July 29, 2015)).

[19] *Id.* (quoting *Prod. Res. Grp., L.L.C. v. NCT Grp., Inc.*, 863 A.2d 772, 802 (Del. Ch. 2004)).

[20] *Id.*

6

## LEGAL ANALYSIS

In the Motion, Cigna requests that XL produce documents that contain three categories of information: (1) XL's claims handling and underwriting guidelines and manuals related to XL's primary and excess managed care and MCE&O insurance; (2) XL's communications with third parties, including XL's reinsurers, about the interpretation and application of the disputed terms in this case; and (3) how XL reached the decision to deny coverage to Cigna. Further, Cigna requests that XL respond more fully to Cigna's interrogatories and requests for admissions on three categories of information: (1) the identities of the supervisors of XL's claims specialist Pidlak; (2) XL's knowledge of DOJ actions against MAOs under the False Claims Act; and (3) the factual bases for XL's conclusion that the CID is not a "Claim" under the Primary Policy.

### A. Production of the Underwriting Manuals

Cigna argues that the scope of the materials discoverable under the Superior Court Civil Rules is broad and, thus, includes the production of the underwriting manuals.[21] XL responds that the underwriting manuals for its primary MCE&O

---

[21] Mot. to Compel Directed at XL. Cigna also requests XL's claims administration documents, communications with reinsurers, and knowledge about DOJ enforcement actions against MAOs. *Id.*

insurance policies are beyond the limits of discovery in this case because they are too remote from the controversy to be relevant.[22]

The standard for relevance is "broad at the discovery stage."[23] In discovery disputes related to the interpretation of an insurance contract, the Court has tended to give the parties "some opportunity to discover information which may present an ambiguity in the insurance contracts at issue."[24] Generally, the drafting history and interpretive materials behind an insurance policy are "discoverable as important to a full understanding of the intent of insurance companies in coverage cases."[25] Training manuals and company policy memoranda and guidelines help to understand how the insurance company intended to apply the policy language that they drafted or adopted.[26]

Still, in high-complexity litigation, "the Court and parties must set rational limits and boundaries on the extent of discovery."[27] Accordingly, the Court has limited an insured's discovery when "the existence of so many variables make[s] the possibility of relevance too remote," "the manner in which the claims of other

[22] XL's Resp.

[23] *Hartree Nat. Gas Storage, LLC v. PAA Nat. Gas Storage, L.P.*, 2023 WL 3914900, at *2 (Del. Super. June 8, 2023).

[24] *Nat'l Union Fire Ins. Co. v. Stauffer Chem. Co.*, 558 A.2d 1091, 1094 (Del. Super. 1989).

[25] *Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co.*, 623 A.2d 1099, 1107 (Del. Super. 1991).

[26] *Id.*

[27] *E.I. Du Pont de Nemours & Co. v. Admiral Ins. Co.*, 1994 WL 555542, at *5-6 (Del. Super. Oct. 4, 1994) (limiting the scope of discovery when failing to do so would delay the trial by at least one year). The burden of a discovery request "can be limited by tailoring the discovery order. *Stauffer Chem. Co.*, 558 A.2d at 1094.

policyholders are handled would create extended mini-trials," or the discovery would exceed rational limits.[28]

Here, Cigna's request for production of XL's underwriting manuals for its primary MCE&O insurance policies goes far afield from the relevant issue in this dispute—XL's underwriting and handling of Cigna's claim. The policy at issue is XL's excess insurance policy, which is a follow-form policy to Chubb's Primary Policy. XL did not write or issue a primary MCE&O policy to Cigna. Thus, the Court has difficulty understanding how XL's primary MCE&O underwriting manuals would inform XL's understanding, interpretation, or position on the disputed terms—"Claim" and "Wrongful Act."[29] XL's interpretations of the disputed terms of Chubb's Primary Policy are best gleaned from the documents that it has committed to producing:

> its underwriting manuals for the issuance of excess, follow-form policies available for use from January 1, 2016 to October 1, 2016, and its claims handling manuals available for use from July 24, 2017 until March 1, 2023. These are the manuals that were available for use by XL when it underwrote the excess, follow-form policy to Cigna, and during the entire time period from when the DOJ CID was noticed until Cigna filed the instant action.[30]

---

[28] *Clark Equip. Co. v. Liberty Mut. Ins. Co.*, 1995 WL 867344, at *3 (Del. Super. Apr. 21, 1995).
[29] The Primary Policy defines a "Claim" to include "any written notice received by an Insured that a person or entity intends to hold any Insured responsible for a Wrongful Act which was committed or allegedly committed." Compl.
[30] XL's Resp.

**B. Production of Communications with Counsel**

Cigna argues that XL's communications with counsel, including Pidlak, are discoverable and not protected by the attorney-client privilege.[31] XL maintains that it retained counsel to provide professional legal advice pertaining to the dispute after it had already issued its coverage position that the XL Policy does not cover the CID defense costs. Further, XL asserts that it did not waive the attorney-client privilege by engaging legal services for the coverage dispute. Hence, XL contends that those communications by outside counsel are privileged and, together with communications by Pidlak during the claims process, will be reflected on a privilege log or produced if not privileged.[32]

Under the attorney-client privilege, the client "has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client."[33] A client can waive the attorney-client privilege by putting the communications at issue in the litigation.[34] But a party "does not waive

---

[31] Mot. to Compel Directed at XL.

[32] XL's Resp.

[33] D.R.E. 502(b).

[34] *JPMorgan Chase & Co. v. Am. Century Cos.*, 2013 WL 1668393, at *3 (Del. Ch. Apr. 18, 2013). This occurs when "(1) the party injects the communications themselves into the litigation, or (2) the party injects an issue into the litigation, the truthful resolution of which requires an examination of the confidential communications." *Id.*; *Hoechst Celanese Corp.*, 628 A.2d at 1125.

10

the attorney-client privilege merely by bringing a suit in which the communications are relevant."[35]

Here, Cigna's request for production of XL's communications with Pidlak is proper because, as acknowledged by XL, Pidlak was the sole claims handler for XL with respect to this matter. It was not until after the claim position was tendered to Cigna that XL engaged legal counsel to provide services specific to the dispute. Thus, any confidential communications between XL and outside counsel that originate from the provision of legal services in connection with the dispute appear to be protected by the attorney-client privilege. XL's communications with outside counsel that are being withheld from production shall be included in its privilege log, at which time a better determination can be made about privilege. Further, the Court does not find that XL waived the privilege merely by engaging counsel to provide legal services in connection with the dispute. XL has not relied upon any of these communications with counsel to advance any position that it takes in this lawsuit.

## C. Interrogatories Concerning Knowledge of Other Enforcement Actions

XL argues that Cigna's interrogatories 22, 23, and 24 are facially overbroad and unduly burdensome because they necessarily require an inquiry into the

---

[35] *Hoechst Celanese Corp.*, 628 A.2d at 1125.

identification of every XL employee who has knowledge of the interrogatories.[36]

Cigna's challenged interrogatories are as follows:

> **INTERROGATORY NO. 22:** Describe Your knowledge of enforcement actions by the Department of Justice against Medicare Advantage Organizations ("MAOs") as of May 4, 2020.

> **INTERROGATORY NO. 23:** Describe Your knowledge of *United States v. Anthem, Inc.*, No. 20-cv-2593 (S.D.N.Y.), including when You first learned of the dispute between Anthem, Inc. and the United States Government.

> **INTERROGATORY NO. 24:** Describe Your knowledge of *United States ex rel. Poehling v. UnitedHealth Group, Inc.*, No. CV 16-08697 (C.D. Cal.), including when You first learned of the dispute between UnitedHealth Group, Inc. and the United States Government.[37]

In Delaware, plaintiffs are entitled to "full interrogatory responses, including the factual and legal bases of defendants' affirmative defenses."[38] That said, "the Court should only direct an interrogatory to be answered if the interrogatory seeks legitimately relevant information, does not annoy and oppress unjustly, and the party made a showing of the need for the information sought by the interrogatory."[39]

Here, XL has sufficiently demonstrated that interrogatories 22, 23, and 24 are overbroad. XL is a corporate entity. Because these interrogatories fail to specify the identity of the person whose knowledge of the referenced case law is requested,

---

[36] XL's Resp.
[37] Mot. to Compel Directed at XL Ex. 3.
[38] *Suburban Med. Servs. v. Brinton Manor Ctr.*, 2022 WL 17688194, at *3 (Del. Super. Dec. 15, 2022).
[39] *Id.*

12

the Court does not direct an answer in this instance. Moreover, the inquiries are not relevant or reasonably calculated to lead to admissible evidence. Cigna contends that the requested information goes directly to XL's defense that it had no notice that the government intended to hold Cigna responsible for a "Wrongful Act."[40] XL's knowledge of the DOJ's investigations of other MAO organizations is far removed from, and has no relevance to, the specific issue here—whether the DOJ CID issued to Cigna is a "Claim" under the applicable policy.

**D. Interrogatories Concerning the Interaction of CIDs and the Primary Policy**

XL argues that interrogatories 26, 27, 28, and 29 are improper because they relate only to incomplete and nonspecific hypothetical scenarios, rather than to any law or fact at issue in the case. XL asserts that it cannot speculate when, and under what circumstances, a CID might become a "Claim," as that term is defined in the applicable policy.[41] Cigna's challenged interrogatories are as follows:

> **INTERROGATORY NO. 26:** Describe the circumstances under which a CID can be both a Governmental Investigation and a Claim as those terms are used in the Primary Policy.

> **INTERROGATORY NO. 27:** Describe the circumstances under which a CID can become a Claim under the Primary Policy.

---

[40] Mot. to Compel Directed at XL ("Indeed, such evidence goes directly to XL's defense that it purportedly had no notice that the government intended to hold Cigna responsible for a Wrongful Act.").

[41] XL's Resp.

**INTERROGATORY NO. 28:** Describe the circumstances under which a CID is to be treated as a Claim under the Primary Policy.

**INTERROGATORY NO. 29:** If You contend that a CID cannot be a Claim under the Primary Policy, Describe the factual basis for Your contention.[42]

Interrogatories "may relate to any matters which can be inquired into under Rule 26(b)."[43] This includes "any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[44] An interrogatory is "not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact."[45]

Here, interrogatories 26, 27, 28, and 29 are not categorically improper. However, they are divorced from the specific facts of this case. The issue in this case is not the circumstances under which a CID can become a "Claim" under the Primary Policy but, rather, the basis for XL's position that the DOJ CID is not a "Claim," as that term is defined in the applicable policy. That inquiry should properly be made through contention interrogatories. Hence, XL's objection to these interrogatories is warranted.

---

[42] *Id.* Ex. 1.
[43] Super. Ct. Civ. R. 33(c).
[44] Super. Ct. Civ. R. 26(b)(1).
[45] Super. Ct. Civ. R. 33(c).

14

## E. Production of Communications with Reinsurers

By letter dated March 5, 2024, Cigna clarified to XL that it is seeking XL's communications with reinsurers "about the interpretation and application of the disputed policy terms . . . or any substantively similar terms."[46] XL objects to this revised demand on the grounds that its communications with reinsurers about the interpretation and application of the disputed insurance policy terms are not in accordance with the proper breadth and relevance of discovery.[47] Cigna contends that XL's communications with reinsurers are relevant to the issue of whether XL believed that Cigna's claim was covered.[48]

Delaware courts often "have recognized the relevance of reinsurance information and ordered production of insurance company communications with their reinsurers in connection with coverage actions."[49] That said, Delaware decisions "have not been unanimous," historically, on the extent to which insurers' communications with reinsurers are discoverable.[50] Production requests that are

---

[46] XL's Resp.

[47] *Id.*

[48] Mot. to Compel Directed at XL Ex. 4.

[49] *Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co.*, 623 A.2d 1099, 1107-08 (Del. Super. 1991) ("The Court finds that defendants' communications with their reinsurers may provide or lead to the discovery of potentially admissible extrinsic evidence of a meeting of the minds concerning the language of the policies at issue."); *Nat'l Union Fire Ins. Co. v. Stauffer Chem. Co.*, 558 A.2d 1091, 1096-97 (Del. Super. 1989) (requiring insurers to produce communications with reinsurers but not with outside counsel).

[50] *Clark Equip. Co. v. Liberty Mut. Ins. Co.*, 1995 WL 867344, at *1 (Del. Super. Apr. 21, 1995). For instance, this Court has referenced cases in which discovery of reinsurance information was denied, viewing reinsurance decisions as primarily business considerations rather than matters of

"carefully tailored . . . to focus on more precise issues of relevance" are viewed more favorably by the Court.[51]

Here, Cigna properly requested production of XL's communications with its reinsurers about the interpretation and application of the disputed policy terms, "Claim" and "Wrongful Act." To assuage XL's concern about the breadth and relevance of the request, the Court will further tailor and limit the request to DOJ CIDs. These communications shed light on XL's interpretation and application of the insurance policy language at issue in this case.

## CONCLUSION

Consistent with the foregoing, Cigna's motion to compel discovery from XL is **GRANTED in part and DENIED in part.**

**IT IS SO ORDERED,** this 27th day of June, 2024.

_____
Sheldon K. Rennie, Judge

---

insurance policy interpretation, and others in which Delaware courts upheld discovery of reinsurance information. *Id.* at *2.
[51] *Id.* at *2.