**HOECHST CELANESE CORPORATION and Celanese Engineering Resins, Inc., corporations of the State of Delaware, Plaintiffs,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, et al., Defendants.**

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, et al., Third–Party Plaintiffs,**

v.

**CENTAUR INSURANCE COMPANY, et al., Third–Party Defendants.**

Superior Court of Delaware,
New Castle County.

Submitted: May 10, 1991.
Decided: Oct. 10, 1991.

**1102**

PRIMARY ARGUING COUNSEL:

Richard E. Poole, and David J. Baldwin of Potter, Anderson & Corroon, Wilmington, for plaintiffs.

Howard M. Berg, Paul Cottrell, and Diane J. Bartels of Berg, Bifferato, Tighe & Cottrell, Wilmington, for defendants.

Donald L. Gouge, Jr., and Gary W. Aber of Heiman, Aber & Goldlust, Wilmington, for defendant Aetna Cas. and Sur. Co.

Kevin G. Healy, and J. Breck Smith of Childerston, Froehlich, Healy & Locke, Newark, for defendants Gibraltar Cas. Co. and Prudential Reinsurance Co.

Richard K. Herrmann, Robert C. O'Hara, and Charlene Davis of Bayard, Handelman & Murdoch, Wilmington, for defendants American Centennial Ins. and Fireman's Fund Ins.

Richard E. Poole, David J. Baldwin, Potter Anderson & Corroon, Wilmington, Joseph D. Tydings, Lorelie S. Masters, Leah D. Allen, Anderson Kill Olick & Oshinsky, Washington, DC, Eugene R. Anderson,

Paul E. Breene, Anderson Kill Olick & Oshinsky, New York City, for Hoechst Celanese Corp. Celanese Engineering Resins, Inc.

Donald L. Gouge, Gary W. Aber, Heiman, Aber & Goldlust, Wilmington, James E. Rocap, III, Stephen L. Braga, Miller, Cassidy, Larroca & Lewin, Washington, DC, for Aetna Cas. & Sur. Co.

Howard M. Berg, Paul Cottrell, Diane J. Bartels, Berg, Bifferato, Tighe & Cottrell, P.A., Wilmington, for AIU Ins. Co., Birmingham Fire Ins. Co., Illinois Ins. Exchange defendants, and Lexington Ins. Co. National Union Fire Ins. Co. of Pittsburgh, PA.

Marlene Monteleone, Joseph E. Kelly, Michael C. Modansky, Sheila Weinstein, Bivona & Cohen, New York City, for AIU Ins. Co., Birmingham Fire Ins. Co., Lexington Ins. Co. and National Union Fire Ins. Co. of Pittsburgh, PA.

Robert J. Katzenstein, Laurence V. Cronin, Leone L. Ciporin, Lassen, Smith, Katzenstein & Furlow, Wilmington, Nancy J. Gleason, Thomas B. Keegan, Gleason, McGuire & Shreffler, Chicago, IL, for Allstate Ins. Co. and Employers Mut. Cas. Co.

Richard K. Herrmann, Robert C. O'Hara, Charlene Davis, Bayard, Handelman & Murdoch, P.A., Wilmington, for American Centennial Ins., Fireman's Fund Ins., and Government Employees Ins.

Stephen J. Smirti, Jr., Rivkin, Radler, Bayh, Hart & Kremer, Uniondale, NY, for Government Employees Ins. Co.

Timothy N. Carlucci, Rivkin, Radler, Bayh, Hart & Kremer, Washington, DC, for Government Employees Ins. Co.

Norman M. Monhait, Rosenthal, Monhait & Gross, Wilmington, Roger E. Warin, Stephen A. Fennell, Paula M. Gesmundo, Stephen Barber, Steptoe & Johnson, Washington, DC, for American Reinsurance Co., City Ins. Co., Eric Reinsurance Co., Highlands Ins. Co. and Home Ins. Co.

Robert T. Aulgur, Jr., Whittington & Aulgur, Odessa, Mark W. Flory, William D. Garcia, Harrington, Foxx, Dubrow & Canter, Orange, CA, for Associated Intern. Ins. Co.

C. Scott Reese, Cooch & Taylor, Wilmington, Lynn Bregman, Gail A. Robinson, Wilmer, Cutler & Pickering, Washington, DC, for California Union Ins. Co., CIGNA Ins. Co. and Insurance Co of North Am.

Roger D. Akin, Bruce C. Herron, Sawyer & Akin, Wilmington, Daniel M. Bianca, Karen Williams, Mendes & Mount, New York City, for Certain Underwriters at Lloyd's London and London Market Ins. Companies.

John A. Elzufon, Elzufon, Austin & Drexler, Wilmington, for Columbia Cas. Co.

James F. Bailey, Bailey & Wetzel, P.A., Wilmington, Lawrence E. Carr, Bridget Kyle, Carr, Goodson & Lee, Washington, DC, for Continental Ins. Co., Harbor Ins. Co., London Guarantee & Acc. Co. of New York, Pacific Ins. Co. and Underwriters Reinsurance.

Anthony G. Flynn, James F. Maher, Young, Conaway, Stargatt & Taylor, Wilmington, Richard Hagstrom, Zelle & Larson, Minneapolis, MN, for Employers Ins. of Wausau Nat. Cas. Co.

David H. Burt, Burt & Burt, Wilmington, for Federal Ins. Co.

Richard W. Pell, Sherry Ruggiero Fallon, Tybout, Redfearn & Pell, Wilmington, for First State Ins., Hartford Acc. & Ind., New England Ins. Co., New England Reinsurance Co. and Twin City Fire Ins. Co.

Elizabeth B. Sandza, Cynthia T. Andreason, Law Offices of Elizabeth B. Sandza, Wilmington, for Hudson Ins. Co.

James W. Semple, Neal C. Belgam, Morris, James, Hitchens & Williams, Wilmington, Laurence M. McHeffey, Gary Kull, McElroy, Deutsch & Mulvaney, Morristown, NJ, for North River Ins. Co.

Donald E. Evans, Vincent A. Bifferato, Jr., Evans & Bifferato, Wilmington, Louis J. Isaacsohn, Wilson, Elser, Moskowitz, Edelman & Dicker, Philadelphia, PA, for Royal Indem. Co.

John G. Mulford, Theisen, Lank, Mulford & Goldberg, P.A., Wilmington, Robert J. Bates, Maryann C. Hayes, Dan J. Hofmeister, Jr., Pope & John, Chicago, IL, for Zurich Ins. Co.

Kevin G. Healy, J. Breck Smith, Childerston, Froehlich, Healy & Locke, P.A., Newark, Michael J. Merlo, Karen L. Douglas, Elizabeth J. Caprini, Pretzel & Stouffer, Chicago, IL, for Gibraltar Cas. Co., Prudential Reinsurance Co.

Robert K. Beste, Jr., Biggs & Battaglia, Wilmington, Judith Fournie Helms, Robert R. Anderson, III, Tressler, Soderstrom, Maloney & Priess, Chicago, IL, for American Motorists Ins. Co (Kemper Group).

Donald M. Ransom, Casarino, Christman & Shalk, Wilmington, for Centaur Ins. Co.

Stephen P. Casarino, Donald M. Ransom, Casarino, Christman & Shalk, Wilmington, Eileen B. Eglin, Maurya Keating, Wilson, Elser, Moskowitz, Edelman Edelman & Dicker, New York City, for Northwestern Nat. Ins. Co.

Timothy N. Carlucci, Rivkin, Radler, Bayh, Hart & Kremer, Washington, DC, for Progressive American Ins. Co.

James F. Bailey, Bailey & Wetzel, P.A., Wilmington, Michael E. Nannes, Laura B. Feigin, Dickstein, Shapiro & Morin, Washington, DC, for Reliance Ins. Co.

John C. Phillips, Phillips, Goldman, Spence & Nolte, Wilmington, Michael D. Gallagher, Lisa B. Zucker, Vincent J. DiStefano, Jr., Kimberly J. Keiser, German, Gallagher & Murtagh, Philadelphia, PA, for Stonewall Ins. Co.

Robert E. Daley, Daley, Erisman, VanOgtrop & Hudson, Wilmington, Thomas M. Hogan, Mahoney, Hogan, Heffler & Heald, Washington, DC, for Tortuga Cas. Co.

Allen M. Terrell, Jr., Richards, Layton & Finger, Wilmington, James D. Wangelin, Henry T. French, Jr., McCullough, Campbell & Lane, Chicago, IL, for X.L. Ins. Co.

## OPINION

GEBELEIN, Judge.

### PLAINTIFFS' MOTION TO COMPEL ANSWERS TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS BY DEFENDANTS

Plaintiffs move this Court for an order compelling the defendant insurance companies to provide full and complete responses to plaintiffs' interrogatories and requests for production of documents.

### A. Discovery History

On February 28, 1990, Hoechst served interrogatories and document requests on defendants. Under the terms of the Case Management Order, the defendants' objections and responses to Hoechst's interrogatories and document requests were due on July 16, 1990, and documents not objected to by defendants were to be produced thereafter. (CMO 1, ¶ V.D.).

Hoechst claims that it received only a limited production of responsive documents, consisting primarily of underwriting files. Defendants base their limited production on their objections that among other things, Hoechst's discovery requests are irrelevant to the issues in the case. Defendants raise various other objections including vagueness, overbreadth, burden, attorney-client privilege, work product doctrine, and the protection accorded to confidential, proprietary, or sensitive business information.

In accordance with the CMO, on December 5, 1990, a meet-and-confer session was held in an attempt to resolve some of defendants' objections to Hoechst's interrogatories and document requests. The parties agreed to limitations or clarifications of some of the interrogatories and document requests. Hoechst agreed that the defendants could supplement their responses by January 18, 1991, and that if the defendants' supplemental responses were not sufficient, Hoechst would move to compel. The supplemental responses received by Hoechst on January 18, 1991 did not provide the information sought in this motion. Hoechst then filed this motion to compel.

Hoechst contends that its interrogatories and request for production of documents seek information necessary to refute the defendants' affirmative defenses and allegations. Thus, Hoechst seeks interpretive and explanatory materials generated by the insurance companies and their trade association agents in drafting, promoting, and

administering the standard form comprehensive general liability ("CGL") policies. Hoechst also seeks documents regarding the defendants' handling the claims against Hoechst, and other documents, such as promotional and reinsurance materials, which may contradict defendants' assertions that the plumbing claims are not covered. Finally, Hoechst seeks production of documents which are claimed to be privileged, but for which no privilege log has yet been produced.

### B. Nature of Material Sought

The materials sought by Hoechst fall into six categories:

(1) information relating to the drafting history of the standard form policy language;

(2) claims and underwriting documents, including manuals, guidelines, and other policy interpretive documents;

(3) the defendants' communications with their reinsurers regarding Hoechst or the plumbing claims;

(4) advertisements, other promotional materials, and research materials; and

(5) information relating to the defendants' risk assessments and losses incurred while insuring Hoechst, including loss runs, internal audit records, and premium information.

(6) documents withheld under a claim of work product or attorney-client privilege from those defendants who have failed to provide privilege logs as required by CMO paragraph V.D.4.

### C. Hoechst's Position

In its motion, Hoechst states that defendants have refused to produce any of the requested information and documents except specific claims files set up for the Hoechst plumbing claims or underwriting files regarding Hoechst's policies.[1] Hoechst asserts that information concerning the intentions of each insurance company and the insurance industry regarding the scope of coverage is critical evidence, and contends that it may be contained not only in the claims and underwriting files, but in the general files as outlined in the five categories.

Hoechst claims that its discovery is not unusual, extraordinary, or oppressive because it focuses on (1) the standard form CGL policy language upon which defendants now base their denials of coverage; (2) the defendants' own assessments of the scope of coverage under those policies, made in the ordinary course of business; and (3) the defendants' own representations, past and present, on the scope of the standard form CGL policy they created and marketed to policy holders such as Hoechst.

### D. Standard for Discovery

In Delaware, it is settled law that the Court should only direct an interrogatory to be answered if the interrogatory seeks legitimately relevant information, does not annoy and oppress unjustly, and the party has made a showing of the need for the information sought by the interrogatory. *See, Williams v. Hall*, Del.Super., 54 Del. 350, 176 A.2d 608 (1961).

Delaware Superior Court Civil Rule 26(b)(1) authorizes discovery which is "relevant" to the subject matter involved in the pending action. Rule 26(b)(1) provides in part:

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of any other part ... It is not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery or admissible evidence.

Under Delaware Rule of Evidence 401, "relevant evidence" is broadly defined as evidence having a tendency to make a consequential fact even the least bit more probable or less probable than it would be without the evidence. Information inadmissible at trial is still discoverable if it

1. Some defendants claim that such specific files do not exist.

"appears reasonably calculated to lead to the discovery of admissible evidence." Superior Court Civil Rule 26(b)(1); D.R.E. 401; Saltzburg & Redden, *Federal Rules of Evidence Manual* 85 (1982); *Bryan v. Thos. Best & Sons, Inc.*, Del.Super., 453 A.2d 107, 108 (1982); *Marshall v. Electric Hose and Rubber Co.*, 68 F.R.D. 287, 295 (D.Del.1975).

### E. Decision

The Court will address each of the six categories of requested material in turn.

### (1)

### Information relating to interpretations and drafting history of the standard form CGL policy language.

 Hoechst claims that information requested in Interrogatory Nos. 17, 24 and 25 and document requests 3, 5, 6 and 7 are necessary to determine defendants' intended application of the CGL policy language

and to determine any association between defendants, certain trade organizations and committees who draft policies of insurance.[2] Hoechst seeks the drafting history of the standard form CGL policies, including interpretive and explanatory materials generated by the insurance companies and by various associations within the insurance industry. Hoechst contends that this information will show the pre-litigation intent of the insurance companies in adopting key policy provisions at issue in this case, and help to establish the scope of coverage.

Hoechst argues that this Court, as well as a majority of courts across the country, has recognized the importance of drafting history to a full understanding of the intent of insurance companies in insurance coverage actions. Defendants object on the grounds of relevancy and raise the argument that the policy language is not ambiguous and that absent ambiguity, extrinsic

**2.** Interrogatories:

17. Identify all documents, no matter how generated, including, without limitation, all insurance industry trade association documents, pertaining or relating to the drafting history of the insurance policies which you sold at any time to plaintiffs.

24. (a) Identify your officers, employees, and representatives that participate in, or at any time during the period 1960 to the present have participated in, the determination or formulation of your position(s) regarding the nature of the event or events which trigger coverage for plumbing claims or similar claims under the language of the insurance policies you sold the plaintiffs;

(b) State the dates such officers, employees, and representatives served in such roles and in what capacity they served; and

(c) Identify all related documents.

25. (a) Identify your officers, employees, and representatives that participate in, or at any time during the period 1960 to the present have participated in, the determination or formulation of your position(s) regarding the nature of any exclusion you contend excludes coverage for the plumbing claims, or similar claims, in the policies that you sold plaintiffs; and

(b) Identify all related documents.

Requests for Production:

3. All documents concerning the drafting, approval, or sale of each insurance policy that you sold to plaintiffs.

5. All documents including, without limitation, drafting history documents, concerning the definition, drafting, origin, construc-

tion, interpretation, application, or modification of the following language, concepts, terms, or provisions of any insurance policy that you sold to plaintiffs

(a) date of loss;

(b) trigger of coverage;

(c) "occurrence";

(d) notice of claim or "suit";

(e) the so-called "sistership" exclusion;

(f) the Insured's products;

(g) the so-called "business risk" exclusion;

(h) "active malfunctioning";

(i) work performed by or on behalf of the insured and the exclusion for the same;

(j) "suit"; and

(k) loss of use and the exclusion for the same.

6. All documents including, without limitation, drafting history documents, concerning the construction, interpretation, application and/or modification of the terms listed in Request 5(a) through 5(k), above, in any insurance policy sold by defendants under which any claim for defense or coverage was made in similar claims against any of your other past or present policyholders.

7. All documents, including, without limitation, drafting history documents, concerning the meaning, application, or interpretation of the terms "occurrence," "accident," "property damage," or "manifestation of property damage" as they relate to the trigger of an insurance company's duty to defend or indemnify with respect to:

(a) the plumbing claims; and

(b) similar claims against any of your other past or present policyholders.

evidence is inadmissible to interpret the insurance policy.

This Court is not convinced by the defendants' assertion that the policy language is unambiguous. In accordance with this Court's prior holdings regarding the broad language of the discovery rules and the definition of relevance, and in keeping with the holding of the majority of courts in other jurisdictions, this Court finds the drafting history and interpretive materials sought by Hoechst to be discoverable as important to a full understanding of the intent of insurance companies in coverage cases. *See, National Union Fire Ins. Co. v. Stauffer Chem. Co.*, Del.Super., 558 A.2d 1091, 1095 (1989); *Allied–Signal, Inc. v. Abeille–Paix Reassurances*, N.J.Super., No. MRSL–226–88 (Law Div. Nov. 3, 1989); *United States Fidelity & Guar. Co. v. Colorado Nat'l Bank*, No. 86–Z–1033, slip op. at 1 (D.Colo. Aug. 15, 1989); *Borg–Warner Corp. v. Liberty Mut. Ins. Co.*, N.Y.Sup.Ct., No. 88–539, slip op. at 11–12 (June 20, 1990). Hoechst's motion to compel these materials is GRANTED.

### (2)

### *Claims and underwriting documents, including manuals, guidelines, and other interpretive documents.*

■ Hoechst asserts that these materials are relevant and discoverable because they are typically prepared by insurance companies to provide guidance to insurance company employees and set forth the insurance company's official position on coverage, claims, loss control issues, and relations with policyholders. Defendants contend such materials are irrelevant because Hoechst did not rely on them and because the undisclosed unilateral intent of one party to a contract is immaterial to the construction of the contract.

The Court finds persuasive Hoechst's contention that the training manuals, company policy memoranda and guidelines, and other documents sought by Hoechst may provide evidence as to how the defendants understood and intended to apply the standard CGL insurance policy language which they drafted or adopted. In addition, these documents may well lead to the discovery of evidence admissible at trial as to the defendants' course of dealing, course of performance, and other industry trade practice in connection with the standard CGL insurance policies, which may be relevant to the mutual understanding of the parties as to the particular policies at issue. The admissibility of the materials is for later determination, but based on the broad standard of relevance in discovery matters, Hoechst's motion to compel with respect to these materials is GRANTED.

### (3)

### *Defendants' communications with their reinsurers regarding HCC or the plumbing claims.*

■ Hoechst claims that reports or other communications by the defendants to their reinsurers concerning Hoechst's claims are relevant and discoverable because they may reflect the defendants' true assessment of their coverage obligations to Hoechst. Reinsurance is the means by which an insurer secures indemnification from another insurer against loss or liability arising from a risk assumed by the initial insurer in insuring a policyholder's claims. Hoechst argues that reinsurance is an integral part of any insurance relationship and may provide or lead to admissible evidence of the insurer's knowledge of the risk and its pre-litigation intentions toward its insured.

Delaware courts have recognized the relevance of reinsurance information and ordered production of insurance company communications with their reinsurers in connection with coverage actions. In *National Union Fire Ins. Co. v. Stauffer Chem. Co.*, Del.Super., 558 A.2d 1091, 1096 (1989), this Court ordered the production of reinsurance information because such discovery is "relevant to the issue of whether the insurers believed that these policies covered the claims against the policyholder." *Id.* at 1096–1097. Similarly, in *Playtex, Inc. v. Columbia Casualty Co.*, Del.Super., No. 88C–MR–233–1–CV, 1988 WL 109304, Del Pesco, J. (Oct. 12, 1988) (memorandum opinion at 2–3), the Court

ordered the production of reinsurance information.

The Court finds that defendants' communications with their reinsurers may provide or lead to the discovery of potentially admissible extrinsic evidence of a meeting of the minds concerning the language of the policies at issue. Furthermore, these communications may be relevant to the relative positions of the parties with regard to their knowledge of the risks associated with CELCON®. Accordingly, the Court finds that the reinsurance information sought is relevant, reasonably calculated to lead to the discovery of admissible evidence, and therefore, discoverable. The ultimate admissibility of this evidence remains for decision. Hoechsts's motion to compel is GRANTED.

### (4)

### *Advertisements, other promotional materials and research materials.*

 Hoechst contends that this information will provide evidence of defendants' pre-litigation interpretations of the standard form CGL policy language and their coverage intent. The plaintiffs further claim that information concerning marketing strategy will demonstrate defendants' intention not only to cover liability arising out of a policyholder's product manufacturing operations, but also will show defen-

3. Interrogatory No. 32 reads:
> 32. Identify all documents that, in any way, evidence, refer to, or relate to your guidelines, policies, rules, instructions, operating procedures, or claims manuals concerning allegations of injury or damage, such as those alleged in the plumbing claims or similar claims, or your handling of the plumbing claims or similar claims.

Request No. 1 reads:
> 1. Each and every insurance policy that you sold to plaintiffs at any time, including all drafts thereof.
> 2. All documents concerning the terms, conditions, and scope of coverage of any insurance policy that you sold to plaintiffs.

4. 16. For each of the insurance policies you sold at any time to plaintiffs, identify the factors that you used in calculating the premiums for the insurance policy. In addition, identify:

dants' awareness of Hoechst operations based on additional engineering and loss control services sold to policyholders including Hoechst. Hoechst claims that information regarding research and/or engineering groups would lead to evidence regarding defendants' understanding of the risks for which they provided coverage.

Defendants respond that the discovery requests may not reasonably be construed to encompass advertising, promotional or research materials and despite plaintiff's claims, are unsupported by legal authority, are irrelevant and will not lead to the discovery of admissible evidence.[3]

This Court agrees that these vaguely phrased discovery requests are not easily construed to encompass advertising, promotional and research material and are not appropriately limited to discovery related to CELCON®. Further, Hoechst has failed to make an adequate showing of the relevance of this information and without more, the motion to compel is DENIED.

### (5)

### *Information regarding and relating to the defendants' assessment of the risks and losses insuring Hoechst, including loss runs, internal audit records and premium information.*

Defendants have objected to Interrogatory No. 16 and Document Request Nos. 12 through 15 and 25.[4]

> (a) All persons with knowledge of the facts; and
> (b) all related documents.
> 12. All documents showing premiums that plaintiffs paid you for the purchase of each and every insurance policy that you sold to plaintiffs.
> 13. All documents that, in any way, discuss, comment on, refer to, relate to, or contain information concerning your calculation of the premium to be paid by plaintiffs for the purchase of each and every insurance policy that you sold to plaintiffs.
> 14. All loss runs concerning the insurance policies that you sold to plaintiffs.
> 15. All of your respective rating adjustments, if any, or other rating records concerning plaintiffs.
> 25. All documents concerning your potential financial exposure as a result of the plumbing claims.

Document Request No. 12 concerns the payment of premiums by plaintiffs. Defendants argue that there is no dispute as to the payment of premiums and that this information is already in possession of Hoechst who paid these premiums. Defendants claim that any document request showing that a premium was paid or not is irrelevant and is not calculated to lead to admissible evidence at trial.

Interrogatory No. 16 and Requests No. 13, 14, and 15 concern the calculation of premiums, loss runs, and rating adjustments. Defendants contend that these discovery requests do not relate to information which insurers had regarding the propensities of CELCON® but instead, relate to mathematical calculations used by the insurers to determine the premium or retrospective rating adjustments for entire policies. They claim that Hoechst should not be permitted to inquire about the strategies of insurers in their decisions to issue policies under the guise that the information is somehow relevant to an insurer's knowledge of the propensities of CELCON®.

Request No. 25 deals with documents concerning defendants' potential financial exposure as a result of the plumbing claims. Defendants argue that so far as this request relates to reserve information, this Court has already held that such information is irrelevant and has little probability of leading to admissible evidence at trial. Defendants further argue that some reserve information is prepared in anticipation of litigation and is protected by attorney-client privilege and work product doctrine. As far as settlements and judgments in underlying claims are concerned, defendants assert that this information is in the possession of Hoechst and that defendants are, in fact, relying on Hoechst to provide this information to them.

■ The Court finds that information regarding the payment of premiums by Hoechst to defendants need not be produced by defendants as it is equally available to Hoechst from its own records. Hoechst's motion to compel with respect to document request No. 12 is therefore DENIED.

■ The Court finds that the information and documents requested by Interrogatory No. 16 and Requests Nos. 13, 14 and 15 regarding the insurers' mathematical calculations and retrospective ratings for policies issued to Hoechst for the period January 1, 1978 to May 1, 1989, and particularly any and all policies directly related to the coverage period in which CELCON® was manufactured and marketed by Hoechst, are potentially admissible evidence of the insurers' knowledge and expectations concerning CELCON® and the underlying plumbing claims. These documents and information requested by Hoechst are therefore relevant and calculated to lead to the discovery of admissible evidence. Plaintiff's motion to compel with respect to Interrogatory No. 16 and Requests Nos. 13, 14 and 15 is GRANTED as to mathematical calculations and retrospective ratings, with the limitation that defendants need not produce documents prepared in anticipation of litigation, protected by attorney-client privilege or the work product doctrine, and which are recorded in a privilege log provided to Hoechst within 20 days of this opinion.

■ To the extent that Request No. 25 seeks reserve information, the Court finds the information sought to be irrelevant. Reserves are accounting entries which an insurance company regularly uses to set aside sufficient funds in the event of policyholder liability. The Court finds unpersuasive Hoechst's claim that the establishment of reserves evidences an acknowledgement by the insurers of their liability for the plumbing claims. Rather, the establishment of reserves is an appropriate business decision justified by the necessity of preserving financial stability in the event of liabilities which cannot be predicted with any degree of certainty. Plaintiffs themselves might choose to set aside funds for the purpose of paying for the underlying plumbing claims without acknowledging the validity of those claims. Reserves do not represent an admission or evaluation of liability and are irrelevant to

the issues between insurer and insured. *See National Union Fire Insurance Co., supra.* Hoechst's motion to compel with respect to reserve information is therefore DENIED.

 The Court finds that information concerning settlements and judgments resulting from the underlying plumbing claims is more likely to be within Hoechst's possession than defendants' or more easily obtained by plaintiffs who are of course parties to those underlying actions. The discovery requests upon defendants in this regard are unnecessary and cumulative of information already within plaintiffs' possession and would be unduly burdensome on defendants. To the extent that plaintiffs' document request No. 25 requests documents concerning settlements and judgments in the underlying actions, plaintiffs' motion to compel is DENIED. To the extent that plaintiffs' request concerns documents representing defendants' evaluations of such settlements and judgments, plaintiffs' motion to compel is GRANTED subject to the limitations provided below for documents protected by attorney-client privilege and work product doctrine.

(6)

***Documents withheld as required by CMO V.D. 4. under a claim of attorney work product or attorney-client privilege.***

Despite defendants' argument that this request is premature and inappropriate because the requests were not made at meet-and-confer sessions, this Court finds that Hoechst is entitled to this information and orders that privilege logs be produced by all defendants other than Aetna, Wausau and Federal Insurance companies, within 30 days of the issuance of this Order.

## F. Conclusions

Hoechst's motion to compel discovery, with respect to:

1. Interpretations and drafting history of the standard form CGL policy language, is GRANTED. Defendants will provide complete interpretations and drafting histo-ry documents concerning its policies of insurance of the type written for Hoechst.

2. Claims, underwriting and internal manuals and guidance documents, in effect from January 1, 1975 through May 1, 1989, is GRANTED.

3. Information relating to communications with reinsurers, is GRANTED.

4. Advertising, promotional and research materials is DENIED.

5. Information concerning the identification of risks and losses, including mathematical calculations and retrospective ratings is GRANTED. As to reserve information and materials concerning settlements and judgments in the underlying claims, the motion is DENIED.

6. Information and documents claimed to be protected by attorney-client privilege and the work product doctrine is DENIED. However, all defendants who have not done so will provide their privilege logs to Hoechst within 20 days of the issuance of this Order.

## I. DEFENDANTS PRUDENTIAL REINSURANCE COMPANY AND GIBRALTAR CASUALTY COMPANY'S MOTION FOR PROTECTIVE ORDER

On December 10, 1990 defendants Prudential Reinsurance Company (Pru Re) and Gibraltar Insurance Company (Gibraltar) filed their motion for protective orders with respect to Rule 30(b)(6) notice of deposition and witnesses made available for deposition.

Defendants seek an order of this Court: (1) finding that the plaintiffs have waived their right to conduct future Rule 30(b)(6) examinations; (2) striking all questions asked by Hoechst attorney, Paul J. Friman during a discovery deposition held December 7, 1990 on grounds that Friman was not admitted *pro hac vice* to the Delaware Bar at the time of the taking of the deposition; and (3) awarding of attorneys fees and costs incurred in attending the deposition and pursuing this motion.

In the alternative, the defendants ask for a protective order: (1) declaring that the Rule 30(b)(6) notices filed by plaintiffs are

overly broad; (2) requiring the plaintiffs to conduct future examinations in accordance with Rule 30(b)(6) and the Case Management Order ("CMO") limiting discovery to document production and interrogatories until March 29, 1991; and (3) ordering reimbursement for attorney's fees and costs in pursuing this motion.

Superior Court Rule 30(b)(6) provides in pertinent part:

(6) A party may in the party's notice name as the deponent a public or private corporation or a partnership or association or governmental agency and describe *with reasonable particularity* the matters on which examination is requested. The organization so named shall designate one or more officers, directors or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. The person so designated *shall testify as to matters known or reasonably available to the organization.* (Emphasis added.)

The Case Management Order regarding discovery states in pertinent part:

**Discovery** 1. The Court expects the parties to cooperate on all discovery matters *to the maximum extent possible.* The parties shall not file motions or otherwise apply for relief on contested discovery issues unless they can certify to the Court that good-faith negotiations have failed to resolve the controversy. The parties shall use their *best efforts* to avoid duplicative discovery requests. (Emphasis added.)

Other relevant sections of the Case Management Order provide:

**CMO Section I.** Until March 29, 1991 discovery shall be limited to document production and interrogatories.

**CMO Section V.B.2.** No depositions shall be taken until April 1, 1991, except depositions of witnesses who are the custodians of documents relating to the issues of this litigation limited to production, location, authentication and identification of documents and any corporate policies relating to the retention or destruction of documents.

**CMO Section V.F.2.** Unless otherwise agreed, all present and former employees of plaintiffs and defendants shall be deposed in the city where the producing party's principal place of business is located.

**CMO Section V.F.6.** Failure on the part of any party to attend and interrogate shall be deemed a waiver of the right to inquire at the deposition. No witness shall be deposed more than once on the same issue(s) without good cause shown.

**CMO Section V.G.2.** A party wishing to object to a discovery request or a deposition may at its option, file a motion for protective order ... the time to respond shall thereupon be stayed until the Court adjudicates the motion.

On August 24, 1990 Hoechst served Notices of Deposition on Pru Re and Gibraltar pursuant to Rule 30(b)(6) directing Pru Re and Gibraltar to each designate "one or more officers, directors, managing agents, or other persons most knowledgeable with respect to the matter set forth in the appendix to this notice to testify on its own behalf." Defendants Pru Re and Gibraltar objected to the notices on the grounds that they were inconsistent with and broader than the provisions of Rule 30(b)(6).

On December 7, 1990, Anthony Lewycky, one of two persons who consented to testify on behalf of Pru Re and Gibraltar, appeared for the Rule 30(b)(6) deposition at the principal place of business of the defendants. Paul J. Friman, an attorney from the firm of Anderson Kill Olick & Oshinsky, counsel for plaintiffs, appeared on behalf of Hoechst to conduct the deposition. Two attorneys admitted to practice in the State of Delaware appeared for Pru Re and Gibraltar.

Defendants contend that during the course of the Lewycky deposition, plaintiffs' counsel Friman repeatedly requested that Lewycky identify persons at Pru Re and Gibraltar who were *most knowledgeable* regarding each of the matters set forth in the notices of deposition, demanded

that defendants produce such persons, and inquired into information beyond the scope of the Case Management Order and unrelated to the Rule 30(b)(6) deposition notice. Further, defendants claim that Friman was not a member of the Delaware bar at the time of the taking of the deposition nor was he admitted *pro hac vice* at the time of the taking of the deposition. Defendants argue that as a person unauthorized to practice law in this proceeding, Friman "failed to appear" at the Lewycky deposition and therefore his appearance resulted in a waiver by Hoechst of its right to inquire further regarding any of the matters set forth in the Rule 30(b)(6) deposition notice. Defendants assert that nine depositions have been conducted on plaintiffs' behalf by attorneys not admitted to practice in this State or admitted *pro hac vice* for the purposes of this litigation. Defendants argue that this conduct on the part of Hoechst would justify this Court in nullifying the deposition of Mr. Lewycky on December 7, 1990 and awarding attorneys fees and costs to defendants.

Hoechst responds that defendants' motion is a "bald attempt to relitigate the scope of the Rule 30(b)(6) notice served by Hoechst and twice held to be valid by this Court."[5] Hoechst further claims: (1) that there is no support in Delaware law nor in the canons of ethics to support defendants' proposition that Mr. Friman's non-*pro hac vice* status constitutes a "failure to attend" the Lewycky deposition; (2) a deposition is not a proceeding "before the court" under Rule 90.1 and is an acceptable forum in which out-of-state counsel may participate; (3) that the defendants violated the Case Management Order in failing to certify that they tried to resolve this matter prior to the request for court intervention; and

(4) that under the doctrine of "the law of the case", which prevents harassment of the Court in matters that have been heard and decided, the validity of plaintiffs' Rule 30(b)(6) notice has been upheld by the Court and need not be scrutinized a second time.

### A. Rule 30(b)(6) Notices

Defendants Pru Re and Gibraltar claim that in a deposition plaintiffs counsel asked questions in the Lewycky deposition which should be stricken from the transcript because they are beyond the scope of the Rule 30(b)(6) notice and are overly broad and general in nature.

The rule in cases involving these type of depositions is set out in *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121 (M.D.N.C.1989) where the Court discussed the obligations which the Federal Rule on which the Delaware rule is based and sets forth the obligations imposed on a party giving notice pursuant to it. The Court observed:

> A notice of deposition made pursuant to Rule 30(b)(6) requires the corporation to produce one or more officers to testify with respect to matters set out in the deposition notice or subpoena. A party need only designate, with reasonable particularity, the topics for examination. The corporation must not only produce such number of persons as will satisfy the request, but more importantly, prepare them so that they give complete, knowledgeable and binding answers on behalf of the corporation. *Marker* at 126.

 This discussion recognizes two guidelines which govern the utilization of the Rule 30(b)(6) process. First, the Rule 30(b)(6) notice must state with reasonable

---

5. On July 27, 1990, several defendants moved for protective order prohibiting Hoechst from taking Lexington Insurance Company's Rule 30(b)(6) deposition, partially on the grounds that the scope of the notice was improper. This Court issued an order dated August 1, 1990, wherein Lexington Insurance Company and AIG Companies' motion for protective order was denied. The Court directed Lexington to produce a witness pursuant to Rule 30(b)(6) as soon as practicable after August 15, 1990.

Despite this Court's August 1, 1990 order, attorneys for Lexington again challenged the scope of the same notice during Lexington's Rule 30(b)(6) deposition on August 30, 1990. During a telephone hearing that day, this Court once again approved the scope of the notice and directed Lexington to respond to questions within the scope of the notice.

particularity the matters on which discovery is requested. Second, the corporation need not produce the "most knowledgeable" person as to each item of a potential inquiry, but can prepare a witness to testify on the corporation's behalf in response to questions on each topic. Furthermore, if the Rule 30(b)(6) examination exceeds the topics outlined in the notice of deposition, the party producing the witness may seek a protective order. *Paparelli v. Prudential Ins. Co. of Am.*, 108 F.R.D. 727 (D.Mass. 1985).

■ A review of the Lewycky deposition transcript indicates that several questions are outside the scope of the Rule 30(b)(6) Notice. For example, Mr. Friman asked Mr. Lewycky about the knowledge of other persons within the organization and their duties.

Q: If you needed an insurance policy, Mr. Lewycky, who would you call to get it? (Tr. 81)

Q: Mr. Lewycky, are you knowledgeable about Gibraltar? ... Generally. (Tr. 127)

Q: In your mind, is there any distinction between Gibraltar and Pru Re? (Tr. 134)

Q: Who would know whether Carol Patettia is in charge of records custody, Gibraltar's records custody? (Tr. 142)

Q: With respect to the approximately 15 employees which you testified you direct not limited to the six that you've just names, can you describe the duties of these employees? (Tr. 169)

Q: Do the 15 employees whom you direct have any other duties besides the handling of claims? (Tr. 173)

These questions fall outside the scope of the notice and the CMO limiting depositions before April 1, 1991 to custodial deponents with regard to the "production, location, authentication, and identification of documents and any corporate policies relating to the retention or destruction of documents ..." CMO V.B.2 The Court hereby orders that these questions and any answers thereto be stricken from the transcript.

■ In addition to questions of the type outlined above, plaintiffs' counsel repeatedly asked the deponent if he was the most knowledgeable person regarding certain matters, asked who the most knowledgeable person is, and objected to Pru Re and Gibraltar's failure to provide a most knowledgeable person with respect to the matters outlined in the notice. The Court finds that defendants were not required to present a most knowledgeable person and that these questions were therefore improper. The remainder of the questions asked at the Lewycky deposition are within the scope of the 30(b)(6) notices and the CMO. The Court will permit future Rule 30(b)(6) examination of Mr. Lewycky will be permitted under Delaware's liberal interpretation of discovery requests; however, plaintiffs are hereby cautioned to conduct any future 30(b)(6) examinations of defendants in full accordance with the Rule and the Case Management Order. All parties are reminded of this Court's directive to make good faith efforts to resolve discovery disputes without court interference and to so certify when making application to the Court. No costs or attorney's fees are awarded to any party as a result of this motion.

### B. Pro Hac Vice Problems

Superior Court Civil Rule 90.1 provides in pertinent part:

(a) Attorneys who are not members of the Delaware bar may be admitted *pro hac vice* in the discretion of the Court and such admission shall be made only upon written motion by a member of the Delaware bar who maintains an office in this state for the practice of law.

(c) Local counsel for any party shall attend all proceedings before the Court, Prothonotary or other officers of the Court, unless excused by the Court for good cause shown. *Attendance of local counsel at depositions shall not be required unless ordered by the Court for good cause shown.* (Emphasis added.)

■ The defendants correctly assert that the courts of this State are highly concerned with the regulation of the legal profession and the balance of the interests of out-of-state attorneys with the right of

this State to protect its citizens by controlling the practice of law within its jurisdiction. *See, Delaware Optometric Corporation v. Sherwood,* Del.Supr., 36 Del.Ch. 223, 128 A.2d 812, 816 (1957); *In re Member of the Bar,* Del.Supr., 257 A.2d 382 (1969); *Petitioner of Nenno,* Del.Supr., 472 A.2d 815, 819 (1983). These cases are not, however, dispositive on the issues raised by Mr. Friman's failure to attain *pro hac vice* status before participating in the Lewycky deposition. Defendants assert that this failure amounted to Mr. Friman being a "non-person" at the deposition. In support of this contention, defendants offer *Horgan v. DeLeeuw,* Del.Super., C.A. No. 86C–FE–66, Toliver, J. (March 26, 1990). In *Horgan,* however, the proceeding was one before the Court and not a deposition. The language of Rule 90.1(c) clearly evidences the expectation that non-Delaware lawyers will participate in discovery by stating that attendance of local counsel shall not be required unless ordered by the Court for good cause shown. The Court agrees with defendants' contention in their reply brief that Rule 90.1 merely excuses attendance of local counsel at depositions, but does not excuse non-Delaware counsel from compliance with the *pro hac vice* requirement. Clearly under Rule 90.1, any appearance *before the Court* requires admission *pro hac vice* prior to the proceeding. A deposition conducted pursuant to the Court rules is a proceeding. However, failure to be admitted *pro hac vice* prior to participating in a deposition will not render the out-of-state attorney a "non-person". The Court finds that Mr. Friman's conduct at the Lewycky deposition did not amount to a "failure to attend" the deposition, which would preclude the party from inquiring further of the witness deposed. Despite its concern with Mr. Friman's failure to follow the applicable rules, the Court finds that

the imposition of such a sanction against the plaintiff is directly in opposition to the Court's policy in discovery matters to facilitate their completion with a minimum of cost to the parties. Defendants' Motion for a Protective Order is DENIED and no attorney's fees are awarded.

Defense counsel's concern with the number of *pro hac vice* admissions of Hoechst counsel was raised at the March 22, 1991 hearing on the motions and again on April 5, 1991. This Court notes this concern and reserves the opportunity to later question counsel as to the need for the number of *pro hac vice* admissions in the event that this number appears to be excessive in handling plaintiffs' case. The Court further notes that in failing to grant the sanction requested it does not approve of the appearance at a deposition of an attorney who is not admitted *pro hac vice* in this proceeding and notes that Mr. Friman promptly made sure that he was subsequently admitted for the purposes of this case.

## II. HOECHST'S MOTION FOR RELIEF FOR DEFENDANTS' FAILURE TO COMPLY WITH THE COURT'S ORDERS REGARDING CUSTODIAL DEPOSITIONS

 Hoechst has filed a motion for relief seeking defendants' compliance with this Court's ruling upholding the validity of the notices and requiring each defendant to provide deposition testimony in response to each category listed in its Rule 30(b)(6) notices. Hoechst does not object to depositions previously taken in response to the 30(b)(6) notices.[6]

Hoechst seeks relief in the form of costs for remedial depositions or, in the alternative, an order requiring production of witnesses responsive to the areas set forth in the Rule 30(b)(6) notices and costs of this motion.

Hoechst further asserts that following a meet-and-confer session held December 5, 1990, the following insurance defendants have agreed to comply with Rule 30(b)(6) notices: (1) Continental Insurance; (2) London Guarantee; (3) Pacific Insurance; (4) Underwriters Reinsurance; and (5) Harbor Insurance.

---

**6.** Hoechst states that the following defendants have substantially complied with the Rule 30(b)(6) notices: (1) Aetna Casualty and Surety; (2) Associated International Insurance Company; (3) City Insurance Company; (4) Home Insurance Company; (5) Highlands Insurance Company; (6) Insurance Company of North America; (7) CIGNA Insurance Company; (8) California Union and (9) Twin City Fire Ins. Co.

Hoechst claims it is entitled to this relief because those defendants who have not complied with the notices have: (1) failed to produce witnesses in a timely fashion prepared to testify about the categories set forth in the notices; (2) produced witnesses that are without knowledge as to the areas set forth in the notices; (3) refused to produce witnesses in accordance with the notices; (4) delayed the taking of depositions by cancelling at the last minute and failing to schedule more than one deponent on a given day; (5) instructed their witnesses not to answer during the depositions in violation of Rule 30(b)(6) under which the appropriate remedy is a protective order; (6) failed to engage in negotiations to resolve these disputes and have repeatedly resorted to court intervention to settle these disputes in violation of the CMO; (7) asserted that they are not bound by this Court's ruling of August 1, 1990 wherein the Rule 30(b)(6) notices were held valid and continue to object to the notice (as to some, not all, defendants). Hoechst asserts that it has attempted to remedy these situations without court intervention, but without success.

Rule 30(b)(6) states:

A party may in the party's notice name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. The organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. The persons so designated shall testify as to matters known or reasonably available to the organization. This subdivision (b)(6) does not preclude taking a deposition by any other procedure authorized in these Rules.

In light of this Court's earlier ruling on the validity of the notices and based on a careful review of these notices in particular, this Court finds Hoechst's Rule 30(b)(6) notices of deposition to be as valid today as they were in August of 1990.

Defendant Employers Insurance of Wausau (hereinafter "Wausau") filed a separate response explaining that it is a separate entity from Wausau International Underwriters (hereinafter "WIU"), a California corporation. Wausau claims that it produced a witness capable of answering questions as to the WIU policies, but explicitly objected to questions about information outside of these policies and outside the purview of the underwriting entity, WIU. Furthermore, Wausau denies Hoechst's allegations that it has used delay tactics during the discovery proceedings and asserts that it has provided complete information in the areas set forth in plaintiffs' notice. Wausau seeks costs incurred in the preparation of its response.

Defendant North River Insurance Company filed its own response asserting that: (1) it has complied with the CMO and rulings thereon; (2) plaintiff has failed to point to a specific violation of the CMO by North River; (3) discovery is limited to document production under the notice; (4) plaintiffs' assertion in the August 30, 1990 telephone conference that they are entitled to any and all information concerning Rule 30(b)(6) notices of deposition is absurd; (5) North River has fully complied with the notices and is not required to produce the "most knowledgeable" person under the notice.

In response to Hoechst's motion, defendant Royal Indemnity Insurance Company (hereinafter "Royal") filed a cross-motion for a protective order asking that plaintiffs be prohibited from any supplemental inquiry or written discovery of Royal regarding the custodial depositions. Royal further contends that it has fully complied with the CMO and Rule 30(b)(6) notices and that additional discovery would be unduly burdensome. Finally, Royal argues that in light of the motion to dismiss for lack of justiciability before the Court, further discovery of the high level excess carriers should be postponed until it is decided that they must remain in this litigation.

This Court **GRANTS** Hoechst's motion for relief to the extent that it requests compliance by all defendants with the Rule 30(b)(6) notices. All defendants who have not substantially complied with the Rule

30(b)(6) notice will do so within 30 days of this opinion. Those defendants which have substantially complied are excused from further Rule 30(b)(6) discovery. No attorneys fees or costs are awarded to the parties participating in this motion.

### III. THE ACIC AND FIREMAN'S FUND MOTIONS FOR PROTECTIVE ORDERS

Defendants, American Centennial Insurance Company (hereinafter, "ACIC") and Fireman's Fund Insurance Company (hereinafter, "Fireman's Fund") filed cross-motions for protective orders and Rule 26 motions for protective orders. The motions were:

**(1) American Centennial Insurance Company's Cross-Motion for a Protective Order.** ACIC moves for entry of a protective order denying plaintiff's motion for relief and ordering plaintiffs to refrain from any and all supplemental and/or additional Rule 30(b)(6) custodial depositions against ACIC.

**(2) American Centennial Insurance Company's Rule 26(c) Motion for a Protective Order.** ACIC seeks an order directing plaintiffs to refrain from any and all supplemental and/or additional written and deposition discovery against ACIC.

**(3) Fireman's Fund Insurance Company's Joinder in Defendant American Centennial Insurance Company's Cross-Motion for Protective Order.** Fireman's Fund filed this motion in response to plaintiff' motion for relief. Fireman's Fund's motion incorporates the ACIC brief in opposition to plaintiff's motion for relief and argues that Hoechst failed to file timely what Fireman's Fund claims is actually a motion to compel and that the Rule 30(b)(6) notices exceed the scope of the CMO and Rule 30(b)(6).

 The basis of the protective orders claimed in these motions are defendants' request that Hoechst be ordered to refrain from any supplemental discovery in connection with the Rule 30(b)(6) notices and that the protective orders be granted in order to protect these defendants from discovery abuses and undue burden. ACIC argues that requiring additional discovery from ACIC would impose undue burden and expense and impede the administration of justice and that limiting discovery would not serve to impede justice. ACIC discusses the potential for abuse of the discovery process in complex insurance coverage litigation and that this is responsible for undermining the administration of justice. ACIC also argues that Hoechst's motion for relief is a motion to compel which Hoechst failed to timely file. ACIC claims that the Rule 30(b)(6) notices exceed the scope of the Rule and the CMO and the "most knowledgeable" person is not required under the notice. These defendants further assert the pending justiciability issue, i.e. that this Court has not yet determined whether these insurers' policies will be reached and finally allege that they are not governed by the Lexington Order because they received notice of the hearing late and did not have the opportunity to join in the Lexington motion for protective order.

Entry of Rule 26 protective orders are discretionary with the Court. Rule 26 defines the permissible parameters of discovery, but encourages courts to place limits where necessary. This Court must weigh the burden of discovery on the party from whom discovery is requested against the hardship to the party seeking discovery.

Despite the assertion on the part of ACIC and Fireman's Fund that additional discovery under Rule 30(b)(6) would impose undue burden on the defendants, this Court finds that this does not outweigh the burden or potential burden to the plaintiff if foreclosed from seeking supplemental Rule 30(b)(6) discovery. To the extent that the motion presented on behalf of defendants, ACIC and Fireman's Fund deal with the Rule 30(b)(6) notices, they are **DENIED.** As to discovery on other matters, the motion is **DENIED** without prejudice to refile. A prompt resolution of the justiciability issue upon discovery of Mr. Israel may lead these parties to refile their motions for a protective order.

### IV. CONCLUSION

In deciding certain defendants' motion to dismiss for lack of justiciability, the Court

agrees that further discovery of plaintiffs' affiant would be helpful in determining the degree of speculation contained in the Israel affidavit and orders formal discovery to be served by the parties on Mr. Israel to determine the basis of the affidavit. Defendants may draft a joint set of interrogatories and requests for production in an effort to avoid duplication and undue burden on plaintiffs' affiant. The Court reserves its decision on defendant Aetna Casualty & Surety Company's motion to dismiss certain high level excess carriers for lack of justiciability pending further discovery of Mr. Israel. Interrogatories and requests for production are to be served and answered, or a deposition conducted, no later than the revised discovery deadline of December 16, 1991. All parties are to cooperate in written discovery and in the scheduling and taking of this deposition as set forth in this opinion and in the Case Management Order. Each party may submit, within *five* (5) days of the completion of this discovery, a brief memorandum on the subject of the Israel affidavit, which is limited to *fifteen* (15) pages in length. There will be no further briefing on the motion to dismiss.

Hoechst's motion to compel answers to interrogatories and production of documents by defendants is:

1. **GRANTED** with respect to interpretations and drafting history of the standard form CGL policy language.

2. **GRANTED** with respect to claims, underwriting and internal manuals and guidance documents.

3. **GRANTED** with respect to defendant's communications with reinsurers.

4. **DENIED** with respect to advertising, promotional and research materials.

5. **GRANTED** with respect to information concerning mathematical calculations of premiums and retrospective ratings. **DENIED** with respect to reserve information, settlement and judgment information.

6. **DENIED** with respect to information and documents claimed to be protected by attorney-client privilege and attorney work-product doctrine. Defendants are to produce privilege logs within 20 days of this order.

Defendant Prudential Reinsurance and Gibraltar's motion for a protective order is **DENIED** with the exception that noted sections of the Lewycky deposition are stricken.

Plaintiffs' motion for relief for defendants' failure to comply with the Court's orders regarding custodial depositions is **GRANTED** and all parties are directed to comply with the Rule 30(b)(6) notices within 30 days of this opinion as noted, *supra.*

American Centennial Insurance Company's and Fireman's Fund Insurance Company's motions for protective orders are **DENIED.**

## ORDER

AND NOW, this 3rd day of January, 1992, the Court having considered various motions filed by defendants[1] on October 18, 1991 regarding the opinion of this Court dated October 10, 1991, and having heard the arguments of the parties on November 22, 1991 and December 13, 1991,

IT IS HEREBY ORDERED that:

1. This Court's draft order of November 22, 1991, erroneously filed is **VACATED.**

2. Various defendants' Motion for Clarification and Amendment misreads the language of the opinion and is **DENIED.** The Court did not decide the substantive issues of trigger of coverage or allocation of losses contested by defendants. The Court merely acknowledged the unresolved nature of these issues by stating that plaintiffs "may" be entitled to allocate its losses in a certain manner, and considered the preliminary matters decided in the opinion with that possibility in mind.

3. The Motion for Reargument and the Motion for Reconsideration and Clarification, which seek reversal or revision of the

1. The motions were filed by various defendants and joined, in whole or in part, by many other defendants. The Court will not separately list the defendants filing each motion and the numerous notices of joinder.

Court's rulings on drafting history and re-insurance information, are **DENIED.** The Court finds that defendants' motions are repetitive of the arguments previously raised and ruled upon. The Court finds that the Court's rulings are not inconsistent with prior decisions of this or other courts, and that the motions present no reason for a reconsideration of the Court's rulings.

4. The portion of the opinion granting plaintiffs' motion to compel discovery of drafting history is clarified as follows: each defendant must produce drafting history material for those policies (portions of policies, clauses in policies, or provisions thereof) which that defendant issued to plaintiffs and which are the subject of this litigation. The defendants need not produce other drafting history.[2]

---

**2.** This does not preclude plaintiffs from inquiring as to whether defendants relied upon standard industry policy language or policy language or drafting history of another insurer in drafting their policies.