**Fretz v. Mutual Benefit Insurance Co.**

C.P. of Allegheny County, no. GD97-000275.

*Dennis M. Morgenstern,* for plaintiff.
*Carol A. Carolla,* for defendant.

WETTICK, *J.,* August 3, 1998—The subject of this opinion and order of court is plaintiff's motion to compel defendant to produce any documents pertaining to the loss reserve that defendant established for plaintiff's claim for underinsured motorist benefits.

This is a bad faith action commenced pursuant to 42 Pa.C.S. §8371. The claim arises out of a 1991 accident in which an automobile operated by plaintiff was involved in a collision with an underinsured vehicle. At the time of the accident, plaintiff was insured under a policy of insurance issued by defendant which provided for underinsured motorist benefits with a $100,000 limit of liability. In March 1996, plaintiff, with defendant's consent, settled his claim against the tort-feasors for the liability carrier's bodily injury policy

limits of $100,000. Subsequently, plaintiff's counsel demanded that defendant pay the policy limits of UIM coverage of $100,000. Defendant's highest settlement offer was $65,000; plaintiff rejected this offer. The panel of arbitrators that heard plaintiff's UIM claim entered an award in plaintiff's favor, finding that he was entitled to benefits in the amount of $265,000 less the $100,000 received from the tort-feasors' liability carrier. Because of the UIM policy limits, plaintiff's recovery was reduced to $100,000.

Plaintiff alleges that his counsel supported plaintiff's claim for payment of the UIM policy limits by supplying defendant with medical reports which established that plaintiff will never be able to return to work and with work records which established a projected loss of earnings of almost $400,000 as a result of plaintiff's disability. Plaintiff's bad faith claim is based on defendant's failure to make a reasonable settlement offer.

In its answer, defendant raises two primary defenses. Defendant alleges that it had a reasonable basis for concluding that plaintiff was not totally disabled from working. It also alleges that it relied in good faith on advice of counsel.

Plaintiff raises the following argument in support of his discovery request. In a bad faith action, the motivation of the insurance company is relevant. "[M]ere negligence or bad judgment is not bad faith." See *Terletsky v. Prudential Property and Casualty Insurance Co.*, 437 Pa. Super. 108, 125, 649 A.2d 680, 688 (1994). Consequently, evidence showing that defendant believed that the case was worth more than its settlement offers is relevant in a bad faith action. Thus, if defendant had valued the case at a significantly greater amount than the amount of its settlement offers, a fact-finder may determine that this conduct establishes that de-

fendant did not make a good faith effort to settle the case at a fair and reasonable value.

Defendant raises two arguments in support of its position that plaintiff should not be permitted to discover the amount of loss reserves set by an insurer for individual claims. First, defendant contends that information regarding the loss reserves is not relevant because a loss reserve cannot be fairly equated with the value of a claim. Second, defendant contends that information regarding loss reserves for individual claims should be protected because the purpose of the statutory obligation to maintain reserves is to ensure the financial stability of insurance companies. If loss reserves set by insurance companies on individual claims are discoverable in bad faith actions, insurance companies may set low reserves. This will undermine the legislative purpose for loss reserves.

I initially address the second argument. As defendant recognizes, insurance companies are statutorily obligated to establish a loss reserve for each claim. I know of no case law which suggests that information should be protected from discovery as a matter of public policy because the production of the information may create an incentive to violate a legal obligation.

In *Cowell v. Borough of Penn Hills,* 34 D.&C.3d 539, C.P. Allegheny (1982), the plaintiff instituted a lawsuit against various municipalities to recover damages for personal injuries allegedly inflicted by police officers without justification. Through discovery, the plaintiff sought the municipalities' investigative files regarding the incident. The municipalities opposed the discovery on the ground that the production of investigative files will discourage police departments from conducting internal investigations. I rejected this argument on two grounds. First, it is the job of the leg-

islature—and not the courts—to create new privileges based on public policy grounds. Second, police departments are obligated to determine whether a charge is founded whenever any complaint of criminal activity is filed. Also see, *Azen v. Lampenfield,* 18 D.&C.3d 574, C.P. Allegheny (1981); Goodrich-Amram (Second) §4011(c):2.

I next consider the argument that there is an insufficient relationship between the loss reserve that an insurance company establishes for an individual claim and the value of the claim for purposes of litigation. Defendant supports its position by relying on the reasoning of a federal district court in *Taxel v. Equity General Life Insurance Co. (In re Couch),* 80 B.R. 512 (S.D. Cal. 1987). In that case, the court reversed an order of the bankruptcy court permitting discovery of the insurance company's loss reserves on the ground that the bankruptcy court mistakenly characterized a loss reserve as an insurer's estimation of probable or potential liability. The court stated:

"The legislature and insurance commissioner establish reserve policy. For this reason alone, a reserve cannot accurately or fairly be equated with an admission of liability or the value of any particular claim. See *Union Carbide Corp. v. Travelers Indemnity Co.,* 61 F.R.D. 411, 413 (W.D. Pa. 1973). ('The contingent and uncertain nature of reserves' might make questions regarding them tantamount to hypothetical questions.) Further, loss reserves must reflect all potential claim expenses. Any claim in which the insurer undertakes to defend the insured must be reflected in reserves since there will be claim handling expenses, including the attorney's fees and court costs of defense." 80 B.R. at 517.

I agree with defendant that the controlling issue is whether the factors that are considered in establishing the amount of the reserve for a particular case are suf-

ficiently similar to the factors that are considered in valuing this case for settlement purposes so that the amounts should be somewhat similar. However, for reasons that I will discuss, I reject defendant's position that on the basis of the current record it is clear that the amount of the loss reserve set by defendant for plaintiff's UIM claim has little to do with the value of plaintiff's UIM claim.

The computation of loss reserves is governed by section 311 of the Insurance Department Act of 1921, Act of May 17, 1921, P.L. 789, as amended, 40 P.S. §92 (Supp. revised 1998), which reads in relevant part as follows:

"The insurance commissioner shall, in calculating the reserve against unpaid losses of any insurance company, . . . set down, by careful estimate in each case, the loss likely to be incurred against every claim presented or that may be presented in pursuance of notice from the insured of the occurrence of an event that may result in a loss. The sum of the items so estimated shall be the total amount of the reserve."

In *Sheppard v. Old Heritage Mutual Insurance Co.,* 45 Pa. Commw. 428, 445, 405 A.2d 1325, 1334-35 (1979), *aff'd,* 492 Pa. 581, 425 A.2d 304 (1980), the court stated that section 311 requires insurance companies to establish a liability for losses, commonly known as "loss reserves." The court said:

"As the above-emphasized language [of section 311] clearly indicates, calculation of loss reserve necessarily entails an element of informed prediction, because 'careful estimate' must be made as to the likelihood of amount of loss not only as to claims presented but also as to claims 'that may be presented' within the prescribed period."

Since section 311 appears to direct an insurance company to set down, by careful estimate, the loss likely to be incurred in each case, defendant has not established that a loss reserve cannot accurately or fairly be equated with an admission of the value of any particular claim because the requirements for setting loss reserves are grounded in statutory language that has a special meaning.[1] However, I agree with defendant that if it produces the loss reserve for plaintiff's UIM claim from the date that the reserve was first set to the date of the arbitration hearing, neither plaintiff nor the court will know whether the loss reserve represents a valuation of plaintiff's claim based on factors that are considered in valuing a claim for settlement purposes. Consequently, since defendant takes the position that information regarding loss reserves is not relevant, I will not at this time compel defendant to provide information as to the amount of the loss reserve that it set for plaintiff's UIM claim.

Instead, I will be compelling defendant to produce any documents that describe the procedures by which defendant establishes the amount of the loss likely to be incurred against every claim pursuant to section 311 of the Insurance Department Act of 1921, to answer any interrogatories that plaintiff submits regarding this subject, and, if necessary, at the request of plaintiff to designate a person to testify on its behalf regarding this subject pursuant to Pa.R.C.P. 4007.1(e). Thereafter, I will require information regarding the loss reserve for plaintiff's claim to be produced only if the discovery that I am permitting shows that the reserve for this

---

1. There do not appear to be any regulations issued by the insurance department governing the calculation of reserves against unpaid losses.

UIM claim may be relevant to the issue of whether defendant failed to make a reasonable settlement offer.

This opinion applies only to the issue presented in this case: whether information regarding the loss reserve for an insured's claim may be relevant where the disputed issue in the bad faith claim concerns the amount of damages that the insured sustained from the accident covered by the defendant's insurance policy. Whether the amount of the loss reserve for an insured's claim is relevant where the disputed issues concern the interpretation of an insurance policy, coverage, or the value of a claim where liability is seriously contested, may involve different issues.[2]

For these reasons, I enter the following order of court:

## ORDER

On August 3, 1998, upon consideration of plaintiff's motion to compel production of documents, it is hereby ordered that: (1) within 20 days, defendant shall produce any documents relating to the manner in which it establishes loss reserves for individual claims; and (2) plaintiff may seek additional information regarding the manner in which defendant establishes loss reserves for individual claims through other methods of discovery.

---

2. I am not aware of any Pennsylvania state courts that have addressed discovery requests seeking information regarding loss reserves. There is limited case law addressing this issue in other jurisdictions. See cases cited at 18A Couch on Insurance §77:1 (2d ed. rev. Supp. June, 1998). Most of the courts that have addressed this issue have considered discovery requests for loss reserves in cases involving coverage disputes. See *e.g., Fidelity and Deposit Company of Maryland v. McCullouch,* 168 F.R.D. 516 (E.D. Pa. 1996); *Hoechst Celanese Corp. v. National Union Fire Insurance Co. of Pittsburgh, Pennsylvania,* 623 A.2d 1099 (Del. Super. Ct. 1991).